**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** CV 14-00330 SJO (RZx)          **DATE:** May 27, 2014

**TITLE:**   Kelly Soo Park v. Karen Thompson

========================================================================
**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                                 Not Present
Courtroom Clerk                                  Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**               **COUNSEL PRESENT FOR DEFENDANT:**

Not Present                                      Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** [Docket No. 11]; **ORDER DENYING PLAINTIFF'S MOTION TO STRIKE** [Docket No. 19]

This matter comes before the Court on Defendant Karen Thompson's ("Defendant" or "Det. Thompson") Motion to Dismiss Plaintiff Kelly Soo Park's ("Plaintiff" or "Park") Complaint ("Motion"), filed on March 3, 2014. Plaintiff filed an Opposition on March 17, 2014, to which Defendant Replied on March 24, 2014. The Court found the matter suitable for disposition without oral argument and vacated the hearing set for April 7, 2014. *See* Fed. R. Civ. P. 78(b). For the reasons stated herein, the Court **GRANTS** Defendant's Motion.

Also pending on the docket is Plaintiff's Motion to Strike Portions of Defendant's Motion ("Motion to Strike"), filed on March 17, 2014, on the grounds that portions of Defendant's Request for Judicial Notice in Support of the Motion ("RJN") are improper under Federal Rule of Evidence 201. (ECF No. 19.) The Court **DENIES** Plaintiff's Motion to Strike.[1]

---

[1] Plaintiff opposes Defendant's RJN arguing that (1) Exhibits A-D and F-Q (which relate to Park's state court criminal action) contain facts subject to reasonable dispute, (2) any statements in Exhibit E (which also relates to the state court action), should be resolved in Plaintiff's favor, and (3) Exhibit R (an episode of the CBS program "48 Hours" about the state court action), is introduced for the truth of its contents in violation of Federal Rule of Evidence 201. (ECF No. 17.) Pursuant to Rule 201, a district court may take judicial notice of facts that are not subject to reasonable dispute and either "generally known" in the community or which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b), (c); *see United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may, . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."). At this stage, the Court views evidence in a light most

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: <u>CV 14-00330 SJO (RZx)</u>     DATE: <u>May 27, 2014</u>

I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges the following. On March 15, 2008, Juliana Redding ("Redding") was strangled to death in her home in Santa Monica, California. (Compl. ¶¶ 1, 17, ECF No. 1.) Det. Thompson of the Santa Monica Police Department ("SMPD") was the lead case investigator. (Compl. ¶¶ 2, 24.) After months passed with no leads, Thompson requested permission from the SMPD to continue the investigation on her own time. (Compl. ¶¶ 1, 18.) In 2010, Det. Thompson had a breakthrough—she matched blood found on Redding's body and at the crime scene to Park's DNA. (Compl. ¶¶ 1, 19.) As a result, the Los Angeles County District Attorney's Office ("LADA") charged Park with Redding's murder.[2] (Compl. ¶¶ 1, 19.)

As part of her criminal defense, Park sought to show that Redding's killer was actually Redding's boyfriend at the time of her death, John Gilmore ("Gilmore"). Park alleges that Gilmore had a history of violence and that Gilmore had previously assaulted Redding. (Compl. ¶ 22.) On the night of the murder, Gilmore sent multiple text messages to Redding expressing his anger and frustration about Redding's failure to respond to certain of his text messages. (Compl. ¶ 23.) Park theorizes that, contrary to Gilmore's alibi that he was at a party until approximately 12:30 a.m. that night, until he left with friends, Gilmore's text messages show that he left the party at 10:30 p.m, apparently alone, giving him time to commit Redding's murder and return to the party. (Compl. ¶ 25.)

On January 31, 2013, Park's investigator interviewed Gilmore's former girlfriend, Melissa Ayala ("Ayala").[3] (Compl. ¶ 27.) During the interview, Ayala told the investigator that Gilmore had been violent toward her and that he had choked her on at least three occasions.[4] (Compl. ¶ 28.) Ayala told the investigator that on one of those occasions, Gilmore stated: "You want to see how she [Julianna] felt?" (Compl. ¶ 28.) On another occasion, Gilmore stated: "Going to show you how [Julianna] felt." (Compl. ¶ 28.) Park characterizes these statements as Gilbert's "admissions" that

---

favorable to Plaintiff. The Court therefore only takes judicial notice of the items in Defendant's RJN to the extent that they do not assert facts subject to reasonable dispute. The Court, however, does not find it necessary to strike portions of Defendant's Motion or the RJN. Accordingly, Plaintiff's Motion to Strike, which is based on Plaintiff's objections to Defendant's RJN, is **DENIED**.

[2] The SMPD awarded Det. Thompson with a "Medal of Merit" for her work on the case. (Compl. ¶¶ 1, 21.)

[3] Gilmore began dating Ayala sometime after Redding's death but at the time of Ayala's interview they were no longer dating. (Compl. ¶ 27.)

[4] Gilmore was allegedly convicted of a domestic violence offense in connection with his choking of Ayala. (Compl. ¶ 31.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:  CV 14-00330 SJO (RZx)          DATE: May 27, 2014

he killed Redding.  (Compl. ¶¶ 32, 60.)  After learning of this allegedly exculpatory evidence, Park provided notice to the LADA of her intention to use Ayala as a witness for her defense at trial.  (Compl. ¶ 32.)

According to Park, Det. Thompson then intimidated and lied to Ayala in order to prevent her from testifying.  (Compl. ¶ 2.)  Thompson allegedly (1) gave unqualified opinions to Ayala regarding Gilmore's innocence, (2) presented false evidence to Ayala, causing Ayala to fear that Gilmore was a threat to her safety, and (3) accused Park's defense team of acting unethically.  (Compl. ¶¶ 16, 41.)  According to Park, Thompson encouraged Ayala, both implicitly and explicitly, not to testify on behalf of Park at her upcoming murder trial.  (Compl. ¶ 16.)

After speaking with Det. Thompson, Ayala allegedly refused any further contact with Park's investigators.  (Compl. ¶ 38.)  Park eventually did subpoena Ayala to appear as a witness at trial.  (Compl. ¶ 39.)

Park then alleges that, due to the "exculpatory evidence" Ayala was ready to provide, Det. Thompson "and/or Defendant Does" 1-10 conversed with the El Segundo Police Department about charging Ayala with assault and criminal threats against Gilmore during an incident that occurred in 2012.[5]  (Compl. ¶ 42.)  As a result, a few weeks before trial, the LADA charged Ayala with felony conspiracy, assault, and criminal threats.  (Compl. ¶ 42.)

On May 9, 2013, Ayala appeared in court pursuant to Park's subpoena to testify at trial.  (Compl. ¶ 43.)  The deputy DA assigned to Park's criminal case informed Ayala's defense attorney that if Ayala was not instructed to invoke her Fifth Amendment right against self-incrimination, the deputy DA would move to recuse Ayala's attorney.  (Compl. ¶ 43.)  After this conversation, Ayala invoked her Fifth Amendment right and declined to testify in Park's criminal matter.  (Compl. ¶ 43.)

In May 2013, the LADA proceeded to trial against Park for Redding's murder.  (Compl. ¶ 50.)  On June 4, 2013, the jury acquitted Park of all criminal charges.  (Compl. ¶ 50.)  Notably, Park's defense team was able to elicit favorable testimony from the prosecution's DNA expert.  The expert opined that it was possible that Park's DNA was transferred to Redding's body by Redding's actual killer when he or she wiped down the apartment to eliminate any fingerprints or DNA from the crime scene.  (Compl. ¶ 51.)

Park now alleges that the acquittal was far less likely without the testimony of Ayala, given that Park's DNA was found at the crime scene.  (Compl. ¶ 52.)  Park contends that Ayala's "critical" testimony would have demonstrated Gilmore's likely "third-party culpability," so Det. Thompson

---

[5] Det. Thompson elaborates on the incident, stating that "on April 1, 2012, Ayala and [two other individuals] made criminal threats and assaulted victims Claudia Diaz and John Gilmore."  (Mot. 7-8.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:   CV 14-00330 SJO (RZx)          DATE:   May 27, 2014

directly and deliberately interfered with Park's defense to the criminal charges. (Compl. ¶ 52.) Her inability to present this evidence limited her to a "failure-of-proof" case rather than proving her innocence. (Compl. ¶ 52.) As a result, post-trial news coverage portrayed Park's acquittal as "getting away with murder" and she continues to be branded as a murderer and suffers damages as a result. (Compl. ¶¶ 5, 52.)

On January 15, 2014, Plaintiff filed her Complaint with this Court asserting three causes of action against Defendant: (1) deprivation of civil rights, 42 U.S.C. § 1983 ("Section 1983"), by violation of the Sixth Amendment's Compulsory Process Clause and denial of the Fourteenth Amendment's Right to Fair Trial; (2) conspiracy to interfere with civil rights, 42 U.S.C. § 1985 ("Section 1985");[6] and (3) declaratory relief. (*See generally* Compl.)

Defendant moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the remaining two causes of action fail to state a claim upon which relief can be granted.[7] (Mot. 1.) Defendant also argues that she is entitled to qualified immunity. (Mot. 19-20.)

II.   DISCUSSION

In reviewing a motion to dismiss under Rule 12(b)(6), a court may only consider the complaint, documents incorporated by reference in the complaint, and matters of judicial notice. *Ritchie*, 342 F.3d at 908. A court accepts the plaintiff's factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (2003). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). To plead sufficiently, a plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

---

[6] Plaintiff's Complaint incorrectly labeled this conspiracy claim as arising under 42 U.S.C. § 1983.

[7] Plaintiff voluntarily dismissed the declaratory relief claim. (Opp'n 20, ECF No. 16.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:  CV 14-00330 SJO (RZx)          DATE:  May 27, 2014

     A.    Section 1983 Claim for Violation of Compulsory Process and Right to Fair Trial

Plaintiff alleges that Ayala had information that would have been beneficial to Plaintiff's criminal defense, and that Defendant violated Plaintiff's right to compulsory process and fair trial by discouraging Ayala from testifying. Defendant argues that Plaintiff's Section 1983 claim fails under Rule 12(b)(6).

"[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citation and quotation marks omitted); *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). The Sixth Amendment gives a defendant the right "to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. However, the Sixth Amendment does not give the defendant an absolute right to compel the presence of any witnesses the defendant may choose. *United States v. Scopo*, 861 F.2d 339, 345 (2d Cir. 1988). To establish a violation of the Sixth Amendment right to compulsory process, the defendant must make a "plausible showing of how [a witness'] testimony would have been both material and favorable to his defense." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982).

First, Plaintiff fails to plead facts sufficient to connect Defendant to Ayala's failure to testify. Plaintiff generally alleges that (1) Det. Thompson conversed with Ayala prior to Park's criminal trial,[8] (2) Ayala was later charged by the LADA as a result of a 2012 incident involving Ayala, Gilmore, and another woman, (3) Ayala appeared at Plaintiff's criminal trial pursuant to a subpoena despite Det. Thompson's conversation with Ayala, (4) the deputy DA suggested to Ayala's attorney that she invoke her Fifth Amendment right against self-incrimination due to her pending criminal charge, (5) Ayala decided to invoke her right against self-incrimination, and (6) as a result of Ayala's invocation, the state court judge did not permit Ayala to testify at Park's trial. (*See generally* Compl.) The only facts relating to Det. Thompson's direct or indirect interactions with Ayala relate to their conversation. Between this conversation and Ayala's failure to testify are actions and decisions by the El Segundo Police Department, the LADA, the deputy DA, Ayala's defense attorney, Ayala herself, and the state court judge. Plaintiff's Complaint does not provide for a reasonable inference that Det. Thompson, the only defendant in this action, caused Ayala not to testify. *See Iqbal*, 556 U.S. at 678.

---

[8] Plaintiff alleges that Det. Thompson stated to Ayala that: (1) Gilmore was innocent of the crime of Redding's murder, thereby presenting false evidence to Ayala; (2) Park was the "killer"/guilty of Redding's murder; (3) Gilmore was "upset" with Ayala, thereby causing her to be fearful of his retaliation, particularly when he repeatedly engaged in domestic violence against Ayala in the past; and (4) Park's investigators were presenting her with false information, and that they would engage in unethical conduct and would "tell every lie they [could] to try and get her off." (Compl ¶ 67A-D.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:  CV 14-00330 SJO (RZx)                    DATE: May 27, 2014

Even if Plaintiff had pleaded sufficient facts to show that Defendant intimidated or persuaded Ayala not to testify, and assuming that Plaintiff's state court acquittal is not a bar to her Section 1983 claim,[9] Plaintiff has not shown how Ayala's testimony would have been "material" to her defense. *Valenzuela-Bernal*, 458 U.S. at, 867 (explaining that, to establish a violation of the Sixth Amendment right to compulsory process, the defendant must make a "plausible showing of how their testimony would have been both material and favorable to his defense.").  Plaintiff clearly argues that the testimony would have been favorable to her defense, and points to cases holding that an acquittal does not necessarily mean that evidence was not material.  (Opp'n 5, 13-15.)  However, Plaintiff fails to plead facts to plausibly and affirmatively demonstrate how that the testimony was actually material.

Accordingly, the Court **DISMISSES** Plaintiff's Section 1983 claim with leave to amend.

> B.    Section 1985 Claim for Conspiracy to Interfere with Civil Rights

To state a claim under Section 1985 for a conspiracy to violate civil rights, a plaintiff must plead four elements:  "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."  *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992).  A "conspiracy may be inferred from conduct and need not be proved by evidence of an express agreement . . . ."  *Ward v. EEOC*, 719 F.2d 311, 314 (9th Cir.1983).  However, "[a] mere allegation of conspiracy without factual specificity is insufficient."  *Karim–Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988) (citations omitted).

Here, the Complaint makes the following allegations regarding the purported conspiracy.  Due to the exculpatory evidence Ayala could provide in support of Plaintiff's criminal defense, Defendant and/or Defendant Does engaged in discussions with the police officers from the El Segundo Police Department to charge Ayala with assault and criminal threats against Gilmore that allegedly occurred one year earlier. (Compl. ¶ 42.)  Consequently, a few weeks before trial, the LADA filed a complaint against Ayala alleging felony conspiracy, assault, and criminal threats for conduct that occurred from that incident. (Compl. ¶ 42.)  Before Ayala took the witness stand, the deputy DA threatened to "recuse" Ayala's criminal defense attorney if he did not instruct Ayala to invoke her Fifth Amendment right against self-incrimination. (Compl. ¶ 43.)  As a result, Ayala invoked her Fifth Amendment right against self-incrimination and declined to testify in response to Plaintiff's

---

[9] Whether a Section 1983 claim survives absent a conviction in an underlying criminal action "has not yet been definitively resolved in the Ninth Circuit."  *Gutierrez v. Solano*, 862 F. Supp. 2d 1037, 1041-42 (C.D. Cal. 2012).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:   CV 14-00330 SJO (RZx)              DATE:  May 27, 2014

subpoena.  (Compl. ¶ 43.)  As a result of Defendant's actions, Plaintiff was damaged.  (Compl. ¶ 75.)

First, Plaintiff's Section 1985 claim is subject to dismissal based on Plaintiff's failure to sufficiently allege a Section 1983 claim.  *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1168 (9th Cir. 2005) ("The absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations.") (internal quotation marks omitted).

Furthermore, Plaintiff's vague and conclusory allegations of a conspiracy are insufficient to state a claim for conspiracy under Section 1985.  Notably, Plaintiff does not plead any facts relating to a meeting of the minds.  *See Woodrum v. Woodward Cnty*, 866 F.2d 1121, 1126 (9th Cir. 1989) (failure to show a meeting of the minds and the deprivation of rights was fatal to civil rights conspiracy claim); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) ("Vague and conclusory allegations of . . . participation in civil rights violations," without more, insufficient to sustain a claim).  For these reasons, the Court **DISMISSES** Plaintiff's Section 1985 with leave to amend.[10]

III.   RULING

For the foregoing reasons, the Court **GRANTS** Defendant's Motion.  Plaintiff's Complaint is **DISMISSED**.  The Court **DENIES** Plaintiff's Motion to Strike.

Plaintiff may file a First Amended Complaint by no later than **June 13, 2014**.  Plaintiff is **NOT** granted leave to add additional parties to this case.  Should Plaintiff file a First Amended Complaint, Defendant must file a responsive pleading within **fourteen (14) days** of such filing date.  Failure to file a First Amended Complaint will result in this case being dismissed.

IT IS SO ORDERED.

---

[10]   Because the Court dismisses Plaintiff's two causes of action, it need not address Defendant's qualified immunity arguments.