1  MARSHA JONES MOUTRIE, City Attorney
   JEANETTE SCHACHTNER (SBN 116671), Deputy City Attorney
2  jeanette.schachtner@smgov.net
   ANTHONY P. SERRITELLA (SBN 72597), Deputy City Attorney
3  anthony.serritella@smgov.net
   1685 Main Street, Room 310
4  Santa Monica, California 90401
   Telephone: (310) 458-8328
5  Facsimile:  (310) 451-5862

6  Attorneys for Defendant
   CITY OF SANTA MONICA

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10 KELLY SOO PARK,                      CASE NO.: CV 14-00330-SJO(RZX)

11          Plaintiff,                  Honorable S. JAMES OTERO

12   v.                                 NOTICE OF MOTION AND
                                        MOTION BY DEFENDANT KAREN
13 DETECTIVE KAREN THOMPSON; AND        THOMPSON TO DISMISS
   DOES 1-10, INCLUSIVE                 PLAINTIFF'S FIRST AMENDED
14                                      COMPLAINT; MEMORANDUM OF
            Defendants.                 POINTS AND AUTHORITIES IN
15                                      SUPPORT OF MOTION

16                                      (REQUEST FOR JUDICIAL
                                        NOTICE FILED
17                                      CONCURRENTLY)

18                                      Date:  August 4, 2014
                                        Time: 10:00 A.M.
19                                      Ctrm: 1

20                                      Per Local Rule 7-3, counsel met and
                                        conferred on February 11, 2014 and
21                                      June 18. 2014

22 TO PLAINTIFF, KELLY SOO PARK, AND TO HER ATTORNEYS OF RECORD:

23        YOU ARE HEREBY NOTIFIED that on August 4, 2014 at 10:00 a.m., or as

24 soon thereafter as the matter can be heard, in the Courtroom of the Honorable S.

25 James Otero, United States District Judge, defendant KAREN THOMPSON will

26 move to dismiss the First Amended Complaint without leave to amend.

27        The motion is grounded on Rule 12(b)(6) of the Federal Rules of Civil

28 Procedure, and will be based on the previously filed  Request for Judicial Notice at

1   ECF 13 and 14 and Memorandum of Points and Authorities, and the records,

2   pleadings and files herein.

3        Please be governed accordingly.

4   DATED:  July 7, 2014                    Respectfully submitted,

5
                                           MARSHA JONES MOUTRIE
6                                          City Attorney

7                                              */s/ Jeanette Schachtner*
                                           By:_____
8                                             JEANETTE SCHACHTNER
                                              Deputy City Attorney
9                                             ANTHONY P. SERRITELLA
                                              Deputy City Attorney
10
                                           Attorneys for Defendant,
11                                         DETECTIVE KAREN THOMPSON

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................... 1

II. PARK DOES NOT ESTABLISH A VIABLE FIRST CLAIM FOR RELIEF FOR A VIOLATION OF HER RIGHTS TO COMPULSORY PROCESS AND A FAIR TRIAL.............................................................................. 2

    A.   The Record Itself Belies Park's Assertion That Thompson Was Responsible For Precluding Ayala's Proffered 'Third Party Culpability' Testimony. ............................................................ 2

    B.   Assuming *Arguendo* That Thompson Were Somehow Responsible for the Ruling Precluding Introduction of 'Third Party Culpability,' Such Evidence Was Not Material. ............................................... 4

III. PLAINTIFF'S SECOND CLAIM FOR RELIEF FOR CONSPIRACY IS WHOLLY DEFICIENT AND CONTRARY TO THE RECORD OF THE CRIMINAL COURT ................................................................ 9

IV. THOMPSON IS ENTITLED TO 'QUALIFIED IMMUNITY' AS TO ALL CLAIMS ..................................................................................... 10

V. CONCLUSION .......................................................................... 11

DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

Page

**Cases**

*Ashcroft v. al-Kidd,*
   563 U.S. , 662, 131 S.Ct. 2074 (2011)................................................................10, 11

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...............................................................................................3, 4

*Holmes v. South Carolina,*
   547 U.S. 319 (2006) ...................................................................................................8

*Lane v. Franks,* ___ U.S.
   ___ (Slip Opn. at 14)(6/19/2014) ..............................................................................1

*Mattos v. Agarano,*
   661 F.3d 433,  (9th Cir. 2011).................................................................................11

*Montana v. Egelhoff,*
   518 U.S. 37 (1996) .....................................................................................................8

*People v. Hall,*
   41 Cal.3d 826 (1986)..............................................................................................7, 8

*Smith v. Almada,*
   640 F.3d 931 (9th Cir. 2011).....................................................................................8

*Starr v. Baca,*
   652 F.3d 1202 (9th Cir. 2011)...................................................................................4

*United States v. Valenzuela-Bernal,*
   458 U.S. 858 (1982) ..................................................................................................3

**Federal Rules**

F.R.C.P. Rule 11(b)(3)......................................................................................................9

Rule 12(b)(6).....................................................................................................................1

## MEMORANDUM OF POINTS AND AUTHORITIES

## IN SUPPORT OF MOTION

# I. INTRODUCTION

As was true with the original complaint, plaintiff's First Amended Complaint ("FAC") fails to allege actionable misconduct on the part of defendant Detective Karen Thompson.  As the highlighted version of the FAC demonstrates (Document No. 27-1), plaintiff fails to allege any additional material facts to warrant allowing this case to proceed. Instead, the FAC adds conclusory language.  And, to the extent the FAC asserts any new facts, such facts do not add anything to warrant a result different from the Court's granting of Thompson's previous Motion to Dismiss. (Minute Order, ECF. 25)

First, the FAC pleading ignores this Court's finding that "[w]hether a Section 1983 claim [alleging a violation of the Compulsory Process Clause of the Sixth Amendment] survives absent a conviction in an underlying criminal action 'has not yet been definitively resolved in the Ninth Circuit.'"  (Minute Order, ECF 25 at p. 6 at fn. 9.)  As shown here, there is no reason to find otherwise.

Second, plaintiff's FAC merely heaps conclusory allegation on top of the already conclusory allegations contained in the original complaint. Once again, the FAC ignores the judicially noticed Criminal Court record. Still worse, the FAC ignores the succinct guidance provided by this Court:

● The pleading "does not provide for a reasonable inference that Det. Thompson . . . caused Ayala not to testify" in the criminal case.  (Minute Order, ECF 25 at p. 5.)

● The pleading does not show "how Ayala's testimony would have been 'material' to her defense." (*Id*. at p.6.)

Finally, as previously argued, the absence of controlling circuit authority demonstrates that Detective Thompson is entitled to qualified immunity from suit. See, e.g., *Lane v. Franks*, ___ U.S. ___ (Slip Opn. at 14)(6/19/2014)(applying lack of

controlling Supreme Court or circuit court authority as basis for qualified immunity).

For these reasons, the FAC fails in its entirety.

## II.  PARK DOES NOT ESTABLISH A VIABLE FIRST CLAIM FOR RELIEF FOR A VIOLATION OF HER RIGHTS TO COMPULSORY PROCESS AND A FAIR TRIAL

### A.  The Record Itself Belies Park's Assertion That Thompson Was Responsible For Precluding Ayala's Proffered 'Third Party Culpability' Testimony.

As was true with regard to the original complaint, the FAC does not alter the indisputable facts established by the criminal court record: (1) Park actually compelled Ayala's attendance at the criminal trial; (2) it was the trial judge, not Thompson, who refused to permit Ayala's proposed testimony; (3) although so-called third party culpability evidence was available to Park on a proper showing, the criminal trial court judge did not permit such evidence because Park failed to establish its materiality by showing a nexus linking Gilmore to Juliana Redding's murder as required by controlling California Supreme Court precedent; and (4) even after Ayala asserted her Fifth Amendment right not to testify, plaintiff's right to compel the attendance of Ayala at trial was preserved because--as requested by Park's attorney-- the judge kept Ayala under subpoena. [See Request for Judicial Notice "RJN" ECF 13-1, p. 240 (Bates-stamped 246)][1]

Plaintiff fails to allege new facts to show that it was Thompson (rather than the prosecutor, Alaya's criminal defense attorney, Ayala herself, or ultimately the trial judge) who "caused Melissa Ayala to refrain from testifying on behalf of Plaintiff." (FAC ¶17, ECF 27-1) Even the new allegation that "[p]rior to February 6, 2013, witness Melissa Ayala had committed to testifying" and cooperated with the defense

---

[1] All references to Thompson's original Request for Judicial Notice "RJN" filed at ECF 13-1 and 14-1 provide the ECF page number followed by the Bates-stamped "BS" page number.

(FAC ¶39) fails to negate the judicially-noticed fact that persons over whom Thompson had no control were ultimately the decision-makers who determined that Ayala's testimony about Gilmore would not be admitted.

Plaintiff's additional new allegation that Ayala would have testified about Gilmore's allegedly inculpatory statements (FAC ¶¶ 44-45) again begs the question because it was not Ayala's taking the Fifth that precluded her from testifying, but the trial court judge who ruled her testimony inadmissible evidence of third party culpability.

Nor are plaintiff's new allegations in Paragraphs 55 and 72 -- that Thompson's actions "materially affected Plaintiff's right to a fair trial under both the Sixth and Fourteenth Amendments[,]""precluded" Park from introducing evidence of third party culpability, and "caused Ayala to invoke her Fifth Amendment right against self-incrimination" -- sufficient to overcome the record. Those allegations are not fact-based but are mere conclusions. Once again, it was not Thompson who made the ruling precluding the evidence, but Judge Kennedy who found the evidence insufficient as a matter of law to constitute proper third party culpability evidence. Park's speculative claim in paragraph 55 about what a jury "would" have done with Ayala's rejected testimony, fails to make a "plausible showing of how [the] testimony would have been both material <u>and</u> favorable to the defense." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982)(*emphasis added*), cited in Court's Minute Order, p. 6, ECF 25. Moreover, the conclusory allegation is speculative, at best.

In ruling on a motion to dismiss, a court must determine whether the allegations are plausible. The plausibility standard required by *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) "asks for more than a sheer possibility that a defendant has acted unlawfully." Thus, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of elements of a cause of action will not do.' (citations omitted) Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual

1    enhancement.'" *Iqbal*, 556 U.S. at \_\_\_, 129 S.Ct. at 1949.  Instead the complaint must

2    allege sufficient underlying facts to provide fair notice and enable the defendant to

3    defend him or herself effectively. *Starr v. Baca*, 652 F.3d 1202, 1261 (9th Cir. 2011).

4    The determination whether a complaint satisfies the plausibility standard is a "context-

5    specific task that requires the reviewing court to draw on its judicial experience and

6    common sense." *Iqbal*, 556 U.S. at 679.

7         In the context of what occurred at the underlying criminal trial, the allegations

8    in the FAC fail to establish a viable claim for relief against Thompson, because they

9    do not show "more than a sheer possibility that a defendant has acted unlawfully."

10   *Iqbal, supra.*

11        **B.  Assuming *Arguendo* That Thompson Were Somehow Responsible for**

12        **the Ruling Precluding Introduction of 'Third Party Culpability,' Such**

13        **Evidence Was Not Material.**

14        In considering the motion to exclude third party culpability, Judge Kennedy

15   listened to the tape-recorded telephone conversation between Ayala and Thompson

16   and also heard testimony on whether there was any evidence that the recently filed

17   criminal charges against Ayala were procured in any manner by either Officer

18   Thompson or Park's prosecutor, Deputy District Attorney Okun-Wiese. Park's

19   attorney also proffered evidence that Gilmore, Redding's boyfriend at the time of the

20   murder, had several years after Redding's murder been accused of domestic violence

21   by Ayala.

22        Park's Investigator Linda Larsen testified about her meeting with Ayala where

23   she learned about the so-called "third party culpability" testimony. Unlike Thompson's

24   interview of Ayala, investigator Larsen did not record the Ayala interview (RJN at

25   ECF 13-1, p. 110 (BS 116); ECF 14-1, p. 35 (BS 344).)

26        Ayala was also present at the criminal trial, having been subpoenaed by Park's

27   attorney, as was Ayala's attorney, Robert Coppola Jr.  Mr. Coppola informed the court

28   that he would have his client assert her rights not to testify. Ayala took the stand, and

4

asserted her rights based on the advice of counsel under the Fifth Amendment and California Constitution not to testify. Judge Kennedy stated: "…if today Miss Ayala is asserting her 5th Amendment rights and not going to testify, then I am going to preclude you from mentioning anything about the third party culpability defense." (RJN at ECF 13-1, p. 231 (BS 237).) The judge further stated that if Ayala changed her mind, then the court would hold a hearing outside the presence of the jury to revisit the issue. The judge also reiterated that the evidence of Mr. Gilmore's alleged third party culpability (alleged violent outbursts, etc.) were "not going to come in if you don't have the <u>connecting evidence to the crime itself</u>. And the connecting evidence to the crime itself, from my understanding of all of this stuff, is Mr. Gilmore's statements. And if you cannot admit Mr. Gilmore's statements, then none of that other stuff [i.e. testimony from Ayala] is going to come in. None of it." (RJN at ECF 13-1, p. 232 (BS 238) (emphasis added.)

    As to the Ayala interviews, Judge Kennedy stated she was "not particularly enamored with either of the conversations [by the defense investigator or by Thompson] that occurred with Miss Ayala *** Both sides appear to be trying to sort of court favor or whatever with this witness, Ayala. But I don't think that either of those interviews, from what I have heard of them, and the taped interview of Thompson and Ayala rise to the level of some kind of misconduct. [¶] The way that the record of the interview with Detective Thompson and Miss Ayala is is that Detective Thompson did not know the details of what Miss Ayala had said to [Park's investigator] Miss Larsen and didn't apparently try to find out those details. [¶] After commenting about Ayala's volatile relationships with her boyfriends, Judge Kennedy stated: "I don't think necessarily that Detective Thompson is responsible for that I don't find that there was misconduct on the part of Detective Thompson that would justify this court either ordering a grant of immunity or ordering that hearsay evidence come in at this trial." (RJN at ECF 13-1, pp. 245:ff (BS 251:ff).)

    Judge Kennedy concluded regarding Ayala: "Her expression throughout that

1  phone call of not wanting to get involved, she said that over and over again. And at

2  the conclusion or near the end of that phone call Detective Thompson says, 'If you

3  receive a subpoena, you will have to testify and you are going to have to tell the truth.'

4  And it is left there.  And whether a witness wants to talk to law-enforcement or

5  whether a witness wants to talk to a defense investigator, it is up to that witness to

6  make that decision for themselves. [¶]  She is under subpeona now. She has a case

7  pending against her. She has counsel to advise her on that. And at the moment she has

8  indicated that she wished to assert her 5th Amendment rights. [¶] The court doesn't see

9  that there is any remedy necessary because I don't find that there was misconduct on

10 the part of Detective Thompson that would justify this court either order a grant of

11 immunity or ordering that hearsay evidence come in at this trial." (RJN at ECF 13-1,

12 pp. 246-47 (BS 252-53).)

13      Park also filed a motion seeking to have the court grant use immunity to Ayala.

14 At the hearing held on May 15, 2013, in opposition to Park's motion, the prosecution

15 argued that at the prior week's hearing, the court denied a motion to dismiss based on

16 the alleged misconduct of Thompson, and that "it was very clear that, by the tape

17 recording of Miss Ayala, she didn't want to be involved in the first place."  (RJN at

18 ECF 14-1, p. 7 (BS 216) lines 24-26.)  The prosecutor also argued that the evidence

19 from Ayala was not "clearly exculpatory" (*Id*., p. 8-9 (BS 317-319) lines 28-8.) and

20 that the court "should not grant Miss Ayala immunity." (RJN at ECF 14-1, p. 9 (BS

21 318) lines 23-25.)

22      In response, Park's attorney argued there was evidence Gilmore had used

23 violence against Redding, although not against her person. (ECF 14-1, pp. 20-22 (BS

24 329-331), lines 23-23.) The prosecutor retorted that Redding continued to see Gilmore

25 even after these events, and that it was simply a young couple having an on-and-off-

26 again relationship.  (ECF 14-1, p. 24 (BS 333) lines 1-8; See also Private Investigator

27 Larsen's testimony at ECF 13-1, p. 104 (BS 110) where she stated that Ayala had

28 returned to dating Gilmore.) Moreover, the prosecutor pointed out that none of the

1  defense evidence established that Gilmore ever laid a hand on Redding. (ECF 14-1,

2  pg. 26 (BS 335), lines 9-12.)

3      Judge Kennedy concluded that the defense had not established a nexus between

4  Gilmore and the murder, and denied the motion to admit that evidence of third party

5  culpability (ECF 14-1, p. 25-28 (BS 334-337) lines 9 – 3.)  Judge Kennedy reasoned:

6          So I don't believe that her Due Process rights or right to a fair trial are

7          compromised by requiring the defense to adhere to the standards that the

8          California Supreme Court has set forth with regard to third party

9          culpability and the Evidence Code and everything else that applies to

10          both sides.  [¶] So the motion to admit that evidence is denied.  (ECF 14-

11          1, p. 27 (BS 336) lines 10-17.)

12      Under California criminal procedural standards, Park's allegations of materiality

13  (FAC ¶55) do not show why or how Ayala's proposed testimony was proper evidence

14  of third party culpability. Her allegations do not establish a connection between

15  Gilmore's statements/behavior to Ayala and the murder of Juliana Redding, as

16  California law requires.

17      The California Supreme Court has made clear:

18          To be admissible, the third-party evidence need not show `substantial

19          proof of a probability' that the third person committed the act; it need

20          only be capable of raising a reasonable doubt of defendant's guilt. At the

21          same time, we do not require that any evidence, however remote, must be

22          admitted to show a third party's possible culpability. . . . [E]vidence of

23          mere motive or opportunity to commit the crime in another person,

24          without more, will not suffice to raise a reasonable doubt about a

25          defendant's guilt: there must be direct or circumstantial evidence linking

26          the third person to the actual perpetration of the crime.

27  *People v. Hall*, 41 Cal.3d 826, 833 (1986)(*emphasis added*).

28      In the criminal case against Park, there was no evidence linking the third person

(Gilmore) to the actual perpetration of Juliana Redding's murder, as *Hall* requires. No DNA, blood, fingerprint, eyewitness, or other testimony linked Gilmore to Juliana Redding's murder, nor does Park make any such allegation.

The rule in *Hall* is synchronous with United States Supreme Court jurisprudence, and has never been ruled invalid. The rule is designed to focus on evidence that links a perpetrator to the crime, and to prevent admission of remote immaterial evidence that does not tend to prove or disprove a material element of the crime, and would instead do no more than confuse the jury. Judge Kennedy's ruling on the admissibility of third party culpability evidence, following the rule in *People v. Hall*, focused the jury on issues and not some remote evidence about what Gilmore may have done years later with a different girlfriend, Melissa Ayala.

Thus, in *Holmes v. South Carolina*, 547 U.S. 319 (2006), the Court unanimously held that when the intrinsic probative value of evidence of third-party guilt is remote or lacks a substantial connection to the crime (as F.R.E. 403 provides), or when the evidence does not tend to prove or disprove a fact material to the crime, the evidence may be properly excluded. As the Court has also made clear, "unless the rule of evidence itself violates a fundamental principle of fairness" it is not constitutionally suspect. *Montana v. Egelhoff*, 518 U.S. 37, 55 (1996).

Plaintiff's allegation--really no more than an argument hidden within the FAC-- that Judge Kennedy's ruling to preclude Ayala's proposed testimony of what Gilmore allegedly told her, "thereby limit[ed] Plaintiff to a failure of proof case rather than proving her innocence[,] and the fact that there were lengthy jury deliberations (FAC ¶55), does not change the result.[2] In short, Thompson cannot be held liable for events she did not control. *Smith v. Almada*, 640 F.3d 931, 943 (9th Cir. 2011) n.3 (Gwin, J., *specially concurring*) (while *ex parte* contact between police and judge are improper,

---

[2] Plaintiff's speculative allegation that had the evidence of alleged third party culpability been admitted, "the jury would have acquitted Plaintiff the first day of deliberation" (FAC ¶ 55) is entirely speculative. Only a soothsayer could make that claim.

1   "judge ultimately had the responsibility" over trial proceedings).

2   **III.  PLAINTIFF'S SECOND CLAIM FOR RELIEF FOR CONSPIRACY IS**

3   **WHOLLY DEFICIENT AND CONTRARY TO THE RECORD OF THE**

4   **CRIMINAL COURT**

5           The plaintiff was admonished by the Court not to add additional parties in

6   amending the complaint. (ECF 25, Minute Order at p. 7).  Despite that instruction and

7   the unambiguous record from the criminal court, plaintiff again asserts that Thompson

8   "and/or" a Doe from the Santa Monica Police Department, and now adds "a

9   representative of the El Segundo Police Department" caused charges to be filed

10  against Ayala "because the filing of charges would cause Ms. Ayala to invoke the

11  Fifth Amendment" thereby precluding the evidence about Gilmore the defense wanted

12  admitted. (FAC ¶78)

13          Further, even plaintiff acknowledges the weakness in her claim against

14  Thompson when she asserts: "Thompson **and**/**or** defendant Does" engaged in

15  discussions with El Segundo police to charge Ayala. (emphasis added FAC ¶ 43).[3]

16          The allegations of a conspiracy are frivolous, and plaintiff has no evidence to

17  allow her to make such outrageous claims. Indeed, the claims were the subject of a

18  hearing before Judge Kennedy just before the jury trial began. Lester Kuriyama, a

19  Deputy District Attorney assigned to the Airport courthouse, filed the criminal case

20  against Ayala and two other individuals that had been investigated by the El Segundo

21  Police Department. That criminal case alleged that on April 1, 2012, Ayala and the

22  other two defendants made criminal threats and assaulted victims Claudia Diaz and

23  John Gilmore. (ECF 13-1, p. 194-196 (BS 200-203).)  DDA Kuriyama testified that he

24  had never met or spoken with the prosecutor in the Park case, did not have any contact

25

26  _____

27          [3]  As was true in the original complaint, Park's non-specific conspiracy
     allegations once again runs afoul of F.R.C.P. Rule 11(b)(3) which requires "the factual
28  allegations have evidentiary support" unless the pleading specifies that it will "will
     likely have evidentiary support after a reasonable opportunity for further investigation
     or discovery[.]"

1  with Detective Thompson, <u>nor with any member of the Santa Monica Police</u>

2  <u>Department</u> about the filing of the case in the Airport Court. (ECF 13-1, p. 198 (BS

3  204).)

4       Eric Atkinson, an El Segundo Police Department detective, testified he

5  investigated the case charging Ayala. He stated the offense occurred in April 2012,

6  but that it took a while to investigate as it was an assault with a deadly weapon case

7  [use of a dog as a weapon to commit the assault], which required interview of

8  witnesses, photo lineups, surveillance tape examination, and the like. During the

9  investigation, <u>he made no contact with the prosecutor in the Park case, or with any</u>

10  <u>member of the Santa Monica Police Department, including Officer Thompson</u>. He

11  received no communication from any outside source that influenced his handling of

12  the case.[4]

13  **IV.  THOMPSON IS ENTITLED TO 'QUALIFIED IMMUNITY' AS TO ALL**

14  **CLAIMS**

15       In its ruling on the motion to dismiss the original complaint, the Court did not

16  reach the qualified immunity issue.

17       Thompson urges the Court to do so at this point. The analysis required in

18  determining qualified immunity —whether the constitutional right was clearly

19  established at the time of the conduct—requires an inquiry into whether the contours

20  of the right (here the Sixth Amendment right to compulsory process) were

21  "'sufficiently clear' that every 'reasonable official would have understood that what

22  he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. , 662, 131 S.Ct. 2074,

23  2083 (2011) (citation omitted). While the Supreme Court "do[es]not require a case

24  directly on point, ... existing precedent must have placed the statutory or constitutional

25

26  _____

27     [4] Plaintiff also sought to introduce evidence that Ivan Ivanov, a handyman

28  whom Park's attorneys suggested had stalked Redding, might be the murderer. Judge Kennedy also found: "There is insufficient nexus, based on the proffer …to admit third party culpability evidence as to Ivan Ivanov." (ECF 13-1, p. 239 (BS 245), lines 26-28.)

DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  question beyond debate." *Id*. (emphasis added). See also analysis from *Mattos v.*
2  *Agarano*, 661 F.3d 433, 440-42 (9th Cir. 2011)(en banc).

3       Finally, although liability may exist in an "obvious case" where there has been
4  a constitutional violation, the Supreme Court recently clarified that determination of
5  the obvious case is quite demanding. Thus, in *al-Kidd*, *supra*, the Court emphasized
6  that it has "repeatedly told courts not to define clearly established law at a high level
7  of generality." *Id*., 131 S.Ct. at 2084.

8  **V. CONCLUSION**

9       As established above, and in the original motion to dismiss, there is no Supreme
10  Court or Ninth Circuit decision which holds that the alleged actions here were
11  violative of plaintiff's Sixth and Fourteenth Amendment rights, and no controlling
12  case which imposes civil liability for a Sixth and Fourteenth Amendment violation
13  when the criminal trial has resulted in an acquittal. In addition, as the records from the
14  criminal trial establish, it was not Thompson who decided to preclude Ayala's
15  testimony about alleged third party culpability of Ayala's boyfriend, Gilmore.

16       For all the above reasons, the Court should grant Detective Thompson's Motion
17  to Dismiss in its entirety.

18  DATED:  July 7, 2014                    Respectfully submitted,

19

20                                          MARSHA JONES MOUTRIE
                                            City Attorney

21                                          */s/ Jeanette Schachtner*
22                                          By:_____
23                                          JEANETTE SCHACHTNER
                                            Deputy City Attorney
                                            ANTHONY P. SERRITELLA
24                                          Deputy City Attorney

25                                          Attorneys for Defendant,
                                            DETECTIVE KAREN THOMPSON

26

27

28

DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT