JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

| | |
|---|---|
| **CASE NO.:** CV 14-00330 SJO (RZx) | **DATE:** September 16, 2014 |
| **TITLE:** Kelly Soo Park v. Karen Thompson | |

========================================================================

**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                               Not Present
Courtroom Clerk                                Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF(S):**          **COUNSEL PRESENT FOR DEFENDANT(S):**

Not Present                                    Not Present

========================================================================

**PROCEEDINGS (in chambers): ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** [Docket No. 30]

This matter comes before the Court on Defendant Karen Thompson's ("Defendant" or "Det. Thompson") Motion to Dismiss Plaintiff Kelly Soo Park's ("Plaintiff" or "Park") First Amended Complaint ("Motion II"), filed on July 7, 2014. Defendant filed a Request for Judicial Notice in Support of Motion II on July 7, 2014. Plaintiff filed an Opposition to Motion II on July 14, 2014, to which Defendant Replied on July 21, 2014.

For the reasons stated herein, the Court **GRANTS** Defendant's Motion II.

I.      FACTUAL AND PROCEDURAL BACKGROUND

On May 27, 2014, the Court granted Defendant's first Motion to Dismiss ("Motion") and denied Plaintiff's Motion to Strike Portions of Defendant's Motion ("Motion to Strike"). (Order Granting Defendant's Mot. ("Order"), ECF No. 25.) Plaintiff filed her First Amended Complaint on June 12, 2014 ("FAC").

The Court thoroughly described the background case in its Order. (Order 2-4.) In her original Complaint, Plaintiff alleged the following. Juliana Redding ("Redding") was strangled to death in her home in Santa Monica, California on March 15, 2008. Park was charged with the murder after Det. Thompson, who led the investigation, matched blood found on Redding's body and at the crime scene to Park's DNA. According to Park, Det. Thompson caused a witness, Melissa Ayala ("Ayala"), to refuse to testify about threatening statements made to her by her former boyfriend, John Gilmore ("Gilmore"). Park believed the statements included Gilmore's admissions that he killed Redding. The jury ultimately acquitted Park of all criminal charges. Park brought this civil action against Det. Thompson, alleging that her acquittal was far less likely without the testimony of Ayala.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:  CV 14-00330 SJO (RZx)          DATE: September 16, 2014

Plaintiff's FAC includes 12 amended factual allegations.  (ECF No. 27-1.)  Park now alleges the following.  Gilmore, who was Redding's boyfriend at the time of her death and had a history of domestic violence, broke into and destroyed property in Redding's home days before the murder.  (FAC ¶ 23.)  Park alleges that her DNA, which was found on Redding's body and at the crime scene, did not consist of Park's blood.  (FAC ¶ 20.)

According to Park, Gilmore's threatening statements to his then-girlfriend Ayala constitute "direct evidence that Gilmore confessed to the murder of Redding."[1]  (FAC ¶¶ 17, 44.[2])  Gilmore made these statements on two occasions when Ayala asked about Redding's death and she accused Gilmore of killing Redding.  (FAC ¶ 29.)

Park alleges, on information and belief, that Ayala would have provided testimony about Gilmore's statements but for Det. Thompson's "unconstitutional conduct."  (FAC ¶ 17.)  Prior to a telephone call between Ayala and Det. Thompson on February 6, 2013, Ayala had committed to testifying and had cooperated with Park's investigators working on behalf of Park's criminal defense.  (FAC ¶ 39.)  During the phone call, Det. Thompson allegedly (a) lied about the evidence incriminating Park; (b) unequivocally emphasized that Gilmore was innocent; and (c) told Ayala that Gilmore was "upset" about Ayala's statements.  (FAC ¶ 44.)  After the phone call, Ayala refused further contact with Plaintiff's investigators.  (FAC ¶ 39.)

Park alleges, on information and belief, that if Det. Thompson had not caused Ayala to believe that her testimony would hurt Gilmore and to fear for her safety, Ayala would have testified about Gilmore's statements.  (FAC ¶ 44.)  Park also alleges, on information and belief, that Ayala would have testified about Gilmore based on Ayala's need to (a) prevent Park from being wrongfully convicted; (b) provide truthful evidence against Gilmore if he did commit the murder; and (c) protect herself and other women from future violent attacks by Gilmore.  (FAC ¶ 45.)

Park alleges, on information and belief, and based on the "exculpatory evidence" that Ayala could provide for Park's criminal defense, that Det. Thompson and/or Defendant Does from the Santa Monica Police Department spoke with a representative of the El Segundo Police Department about the need to prevent Ayala from testifying as a basis for filing charges against Ayala.[3]  (FAC ¶¶ 43, 78.)  Det. Thompson and/or Defendant Doe allegedly represented to them that it was important to file the charges as soon as possible because the filing would cause Ayala to invoke

---

[1] On two occasions, Gilmore allegedly said to Ayala, "You want to see how she [Juliana] felt?" and "Going to show you how [Juliana] felt" while choking Ayala.  (FAC ¶ 29.)

[2] Plaintiff incorrectly numbered the FAC paragraphs beginning with ¶ 43 of the FAC.  This Order's citations to the FAC are based on the paragraph numbers Plaintiff used.

[3] On April 1, 2012, Ayala and two other individuals allegedly made criminal threats and assaulted Gilmore and another individual.  (Mot. 7-8.)

CASE NO.: **CV 14-00330 SJO (RZx)**            DATE: **September 16, 2014**

the Fifth Amendment and therefore, her testimony about Gilmore's statements would be excluded from Park's trial. (FAC ¶ 78.) The representative from the El Segundo Police Department then agreed to initiate charges and requested that the Los Angeles County District Attorney's Office file charges. (FAC ¶¶ 43, 78.) The District Attorney's Office filed charges against Ayala for felony conspiracy, assault, and criminal threats a few weeks before trial.[4] (FAC ¶ 43.)

On the Friday before Park's criminal trial, in a discussion with Ayala's defense attorney, the Los Angeles County Deputy District Attorney "threatened to 'recuse' the defense attorney if he did not instruct Ms. Ayala to invoke [her] Fifth Amendment right against self-incrimination." (FAC ¶ 43.) After this conversation, Ayala invoked her right against self-incrimination. (FAC ¶ 43.) Park speculates, again on information and belief, that even if Ayala's attorney had instructed her to invoke the Fifth Amendment right against self-incrimination for all of her testimony, Ayala **would not have** invoked the right for the events leading up to Gilmore's statements and the statements themselves. (FAC ¶¶ 45, 72.)

According to Park, Det. Thompson's success in preventing Ayala from testifying "materially affected" Park's right to a fair trial under the Sixth and Fourteenth Amendments of the United States Constitution. (FAC ¶ 55.) After Ayala refused to testify, the state court judge ruled to preclude "anything about the third party culpability defense" for Redding's murder.[5] (Mot. 5.) Park was limited to a failure-of-proof defense. (FAC ¶ 55.) Park claims, on information and belief, that had the testimony been presented to the jury at trial, the jury would have acquitted her on the first day of deliberations instead of after one and one half weeks because the jury would then have had a suspect with a motive to murder Redding. (FAC ¶ 55.)

On June 12, 2014, Plaintiff filed her FAC with this Court asserting the same two causes of action pursued in her Complaint: (1) deprivation of civil rights, 42 U.S.C. § 1983 ("Section 1983"), by violation of the Sixth Amendment's Compulsory Process Clause and denial of the Fourteenth Amendment's Right to Fair Trial; and (2) conspiracy to interfere with civil rights, 42 U.S.C. § 1985 ("Section 1985").[6] (*See generally* FAC.)

---

[4] Ayala waived her right to a preliminary hearing, and the District Attorney dismissed all felony charges. The case has been resolved with Ayala pleading no contest to a misdemeanor charge and receiving a probationary sentence. (FAC ¶ 42.)

[5] Judge Kennedy excluded evidence of Gilmore's alleged third party culpability because there was no "connecting evidence to the crime itself." (Mot. 5.)

[6] Plaintiff voluntarily dismissed the third claim for declaratory relief. (Opp'n 20, ECF No. 16.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: <u>CV 14-00330 SJO (RZx)</u>          DATE: <u>September 16, 2014</u>

Defendant moves to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that both causes of action fail to state a claim upon which relief can be granted.[7] (Mot. II 1.)

II.   <u>DISCUSSION</u>

In reviewing a motion to dismiss under Rule 12(b)(6), a court may only consider the complaint, documents incorporated by reference in the complaint, and matters of judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). A court accepts the plaintiff's factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). To plead sufficiently, a plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Further, for allegations based upon "information and belief" to be facially plausible, either the facts on which the allegations are based must be "peculiarly within the possession and control of the defendant," or the belief must be based on factual information that makes the inference of culpability plausible." *Vavak v. Abbott Labs., Inc.*, No. SACV 10–1995 JVS, 2011 WL 10550065, at *2 (C.D. Cal. June 17, 2011) (quoting *Arista Records, LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010)). If the factual allegations based on "information and belief" are made without further facts, the allegations do not survive a motion to dismiss. *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 694 (9th Cir. 2009); s*ee Simonyan v. Ally Fin., Inc.*, No. CV 12–8495 JFW, 2013 WL 45453, at *2 (C.D. Cal. Jan. 3, 2013) (factual allegations based on "information and belief " containing nothing more than a rote recitation of each claim's elements are insufficient).

///
///
///

   A.   <u>Section 1983 Claim for Violation of Compulsory Process and Right to Fair Trial</u>

---

[7] As in her first Motion, Defendant also argues that she is entitled to qualified immunity. (Mot. II 10.) The Court did not reach the issue of qualified immunity in its Order. (Order 7.)

CASE NO.:   CV 14-00330 SJO (RZx)                 DATE: September 16, 2014

Plaintiff alleges that, but for Defendant's conduct, Ayala would have testified about Gilmore's statements to the benefit of Plaintiff's criminal defense. Plaintiff claims that this conduct violated Plaintiff's right to compulsory process and fair trial. Defendant argues, as she does in her first Motion, that Plaintiff's Section 1983 claim fails under Fed. R. Civ. P 12(b)(6).

"[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky,* 476 U.S. 683, 690 (1986) (internal citations and quotation marks omitted); *Holmes v. South Carolina,* 547 U.S. 319, 324 (2006). The Sixth Amendment gives a defendant the right "to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. However, the Sixth Amendment does not give the defendant the right to compel the attendance and testimony of any and all witnesses. *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982). To establish a violation of the Sixth Amendment right to compulsory process, the defendant must make a "plausible showing of how [a witness'] testimony would have been both material and favorable to his defense." *Id.*

Here, Plaintiff's amended allegations are largely based upon "information and belief" and are insufficient as a matter of law. *See Vivendi SA*, 586 F.3d at 694. First, the facts are not peculiarly within the "possession and control of Defendant," as required to sufficiently plead upon "information and belief."[8] *See Vavak*, 2011 WL 10550065, at *2. Also, the allegations do not plausibly permit a reasonable inference to be drawn. *See Iqbal*, 566 U.S. at 678.

Plaintiff alleges that Defendant's February 6, 2013 telephone conversation with Ayala caused Ayala's refusal to testify and that Ayala would have testified about Gilmore even if her attorney instructed her to invoke her Fifth Amendment right for all of her testimony. (FAC ¶¶ 44-45.) But various actors were involved in the time between the telephone conversation and Ayala's failure to testify. After the telephone conversation, Defendant "and/or Defendant Doe" engaged in discussions with officers from the El Segundo Police Department about Ayala. (FAC ¶ 43.) An officer from the El Segundo Police Department investigated the criminal case against Ayala and recommended prosecution to the Los Angeles County District Attorney's Office, who filed the complaint against Ayala.[9] (Mot. 9.) Days before Park's criminal trial, in a discussion with Ayala's defense attorney, the Los Angeles County Deputy DA threatened to recuse the defense attorney

---

[8] For instance, Defendant did not possess and control knowledge of Gilmore's statements; Ayala did.

[9] Defendant contends that, according to the testimony of the El Segundo Police Department detective, the detective made no contact with the prosecutor in Park's criminal case, Defendant, or any member of the Santa Monica Police Department during the investigation. (Mot. 10.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  CV 14-00330 SJO (RZx)             DATE: September 16, 2014

if he did not instruct Ayala to invoke her Fifth Amendment right against self-incrimination.[10] (FAC ¶ 43.)  After this conversation, Ayala refused to testify. (FAC ¶ 43.)  Ultimately, it was the state court judge who precluded any evidence of third party culpability. (Mot. 5.)  The only facts relating to Defendant's interactions with Ayala relate to their telephone call.  Plaintiff has not pleaded sufficient facts leading to a reasonable inference that it was Defendant's alleged persuasion that caused Ayala not to testify.

Even if Plaintiff's FAC linked Defendant to Ayala's refusal to testify, and assuming that Ayala's state court acquittal is not a bar to her Section 1983 claim,[11] Plaintiff still does not show how the testimony would have been "material" to her third party culpability defense.[12] *Valenzuela-Bernal*, 458 U.S. at 867.

First, Plaintiff speculates, on information and belief, that the jury would have acquitted her on the first day of deliberations had the testimony been presented to the jury.  But even if she were acquitted sooner, Plaintiff would have obtained the same result – she would have been acquitted.  Second, Plaintiff claims that Gilmore's threatening statements constitute "direct evidence" that he admitted to Redding's murder. (FAC ¶ 17.)  But the statements, without further factual support such as evidence of Gilmore's blood, DNA, or physical evidence linking him to the perpetration of the crime, does not lead to a reasonable inference that Gilmore was the murderer. (Reply II 2.)  The testimony is therefore not actually "exculpatory evidence" and its exclusion did not materially prejudice Plaintiff's defense.[13]

Accordingly, the Court **DISMISSES** Plaintiff's Section 1983 claim without leave to amend.

///
///
///
///

---

[10]  Defendant claims that the Deputy DA had never met or spoken with the prosecutor in Park's criminal case nor had any contact with Defendant or any member of the Santa Monica Police Department about the filing of Ayala's case. (Mot. 9-10.)

[11]  Whether a Section 1983 claim survives absent a conviction in an underlying criminal action "has not yet been definitely resolved in the Ninth Circuit." *Gutierrez v. Solano*, 862 F.Supp. 2d 1037, 1041-42 (C.D. Cal. 2012).

[12]  Plaintiff does, however, clearly argue that the testimony would have been "favorable" to her defense. *Valenzuela-Bernal*, 458 U.S. at 867.

[13]  Alternatively, Plaintiff has not shown that Gilmore's statements would be admissible under a hearsay exception of the Federal Rules of Evidence.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 14-00330 SJO (RZx)</u>     DATE: <u>September 16, 2014</u>

      B.      Section 1985 Claim for Conspiracy to Interfere with Civil Rights

Plaintiff claims that Defendant and Doe Defendants 1-10 conspired to violate Plaintiff's Sixth and Fourteenth Amendment rights by intimidating or discouraging Ayala from testifying. Defendant argues that Plaintiff's Section 1985 claim fails under Rule 12(b)(6).

To state a claim under Section 1985 for a conspiracy to violate civil rights, a plaintiff must plead four elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992). A "conspiracy may be inferred from conduct and need not be proved by evidence of an express agreement . . . ." *Ward v. EEOC,* 719 F. 2d 311, 314 (9th Cir. 1983). However, "[a] mere allegation of conspiracy without factual specificity is insufficient." *Karim–Panahi v. L. A. Police Dep't*, 839 F. 2d 621, 626 (9th Cir. 1988) (internal citations omitted).

First, Plaintiff's Section 1985 claim is subject to dismissal based on Plaintiff's failure to sufficiently allege a Section 1983 claim. *See Thornton v. City of St. Helens*, 425 F. 3d 1158, 1168 (9th Cir. 2005) ("The absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations. ") (internal quotation marks omitted).

Furthermore, Plaintiff's amended allegations of a conspiracy, which suffer the same deficiencies as the allegations of a conspiracy in her Complaint, are insufficient to state a claim under Section 1985. Plaintiff's amended allegations contend that Defendant and/or another Doe Defendant from the Santa Monica Police Department spoke to a representative of the El Segundo Police Department about Ayala. (FAC ¶¶ 43, 78. ) As a result of the conversation, the representative agreed to recommend prosecution to the District Attorney's Office, who filed the charges a few weeks before trial. (FAC ¶¶ 43, 78. ) However, this chain of interactions still does not establish a "meeting of the minds."[14] *Ward*, 719 F. 2d at 314; *see Woodrum v. Woodward Cnty, Okl.*, 866 F. 2d 1121, 1126 (9th Cir. 1989) (failure to show a meeting of the minds and the deprivation of rights was fatal to civil rights conspiracy claim); *Aldabe v. Aldabe*, 616 F. 2d 1089, 1092 (9th Cir. 1980) (vague and conclusory allegations of participation in civil rights violations, without more, are

---

[14] For instance, according to Defendant, the El Segundo Police Department detective did not have contact with Defendant during the investigation of Ayala's case. (Mot. 10.) Similarly, the Los Angeles County Deputy DA did not have contact with Defendant about the filing of Ayala's case. (Mot. 9-10).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 14-00330 SJO (RZx)</u>         DATE: <u>**September 16, 2014**</u>

insufficient to sustain a claim). For these reasons, the Court **DISMISSES** Plaintiff's Section 1985 claim without leave to amend.[15]

III. <u>RULING</u>

For the foregoing reasons, the Court **GRANTS** Defendant's Motion II. Plaintiff's First Amended Complaint is **DISMISSED**. This case shall close.

IT IS SO ORDERED.

---

[15] Because the Court dismisses Plaintiff's two causes of action, it need not address Defendant's qualified immunity arguments.