```
 1                    UNITED STATES DISTRICT COURT
                     CENTRAL DISTRICT OF CALIFORNIA
 2                   WESTERN DIVISION - LOS ANGELES

 3

 4   KELLY SOO PARK,            )   Case No. CV 14-330-SJO (PJWx)
                                )
 5        Plaintiff,            )   Los Angeles, California
                                )   Monday, October 22, 2018
 6             v.               )   11:04 A.M. to 11:46 A.M.
                                )
 7   KAREN THOMPSON, et al.,    )   TELEPHONIC HEARING
                                )
 8        Defendants.           )
     _____)
 9

10

11

12                   TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE PATRICK J. WALSH,
13               UNITED STATES MAGISTRATE JUDGE.

14

15   Appearances:              See Page 2

16   Deputy Clerk:             Isabel Martinez

17   Court Reporter:           Recorded; CourtSmart

18   Transcription Service:    JAMS Certified Transcription
                               16000 Ventura Boulevard #1010
19                             Encino, California  91436
                               (661) 609-4528
20

21

22

23

24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.
```

```
 1   APPEARANCES:

 2

 3   For the Plaintiff:        James & Associates
                               By:  BECKY S. JAMES
 4                                  JAYA C. GUPTA
                               23564 Calabasas Road, Suite 201
 5                             Calabasas, California  91302
                               (310) 492-5104
 6                             bjames@ggtriallaw.com
                               jgupta@jamesaa.com
 7
                               RACHEL ROBINSON
 8                             (Contact information not available)

 9

10   For the Defendants:       Lewis Brisbois Bisgaard & Smith LLP
                               By:  DAWN M. FLORES-OSTER
11                                  RYAN D. HARVEY
                               633 West 5th Street, Suite 4000
12                             Los Angeles, California  90071
                               (213) 250-1800
13                             dawn.flores-oster@lewisbrisbois.com
                               ryan.harvey@lewisbrisbois.com
14
                               Santa Monica City Attorney's Office
15                             By:  CAROL A. ROHR
                               1685 Main Street, Room 310
16                             Santa Monica, California  90401
                               (310) 458-8335
17                             carol.rohr@smgov.net

18

19

20

21

22

23

24

25
```

1    LOS ANGELES, CALIFORNIA, MONDAY, OCTOBER 22, 2018, 11:04 A.M.

2         (Call to Order of the Court.)

3              THE CLERK:  Calling Case No. CV 14-330-SJO (PJWx),

4    *Kelly Soo Park v. Karen Thompson, et al.*

5              Please state your appearances.

6              BECKY S. JAMES:  Becky James and Jaya Gupta for the

7    Plaintiff Kelly Park.

8              DAWN M. FLORES-OSTER:  Good morning, Your Honor.

9    Dawn Oster, Ryan Harvey for the defendants.

10             CAROL A. ROHR:  Carol A. Rohr, deputy city

11   attorney, City of Santa Monica, for Defendant Karen Thompson.

12             RACHEL ROBINSON:  And Rachel Robinson for

13   plaintiff.

14             THE COURT:  Good afternoon.  Good morning, counsel.

15   Thanks for getting on the phone with me.

16             MR. ROHR:  Good morning.  Thank you.

17             MS. OSTER:  Good morning.

18             THE COURT:  Okay.  So there's a couple discovery

19   disputes here, and I'm going to start with plaintiffs first

20   and -- plaintiffs' RFPs, but let me just start with -- in

21   general.

22             Number one, the boilerplate objections are

23   overruled.  To the extent that the boilerplate objections

24   were raised, they're overruled.

25             Number two, there's no privilege log.  Without a

1  privilege lot, there is no privilege.  Look, the

2  Federal Rules of Civil Procedure require that, if you're

3  going to withhold something based on privilege, you provide a

4  privilege log.  I have not seen a privilege log.  I'm

5  assuming there are none.  You cannot withhold documents

6  without a privilege log.

7          Three, the plaintiffs' request where they're

8  talking about materials not just from Thompson but from her

9  agents, lawyers, accountants, et cetera -- whatever -- any of

10  that language is stricken, and she's to turn over the stuff

11  that she has, that she did, her reports -- things like that

12  -- in her -- that are within the police department's control

13  from the investigation.

14          So I'll go one by one.

15          RFPs Nos. 1 through 5, the recordings made by

16  Thompson of certain individuals, including Ayala, I'm

17  ordering you to produce those.

18          RFP Nos. 6 through 10, the notes taken by

19  Defendant Thompson regarding certain individuals relevant to

20  this case, I'm ordering you to produce those.

21          RFP Nos. 11 through 15, the reports generated by

22  Detective Thompson during the -- this investigation and

23  thereafter, I'm ordering you to produce those.

24          RFPs Nos. 16 through 25 request emails to, from, or

25  including -- i.e., copying -- Defendant Thompson, I'm

1    ordering you to produce those.

2         RFPs Nos. 26 through 34 request call logs of all

3    calls between Defendant Thompson and these individuals and

4    law enforcement agencies that are relevant to this case.  I

5    am ordering you to produce those.

6         I'll hear from defendants.

7         (Multiple speakers.)

8         MS. OSTER:  Oh, pardon me, Carol.  Go ahead.

9         MS. ROHR:  Just from the first instance,

10   Your Honor, overall position regarding the length of this

11   investigation was from 2008 to -13.  There were many

12   detectives involved and people involved and way beyond just

13   Karen Thompson and, for example, the emails to, from,

14   including, but the word "regarding" meant "referring to,"

15   "suggesting" -- anything that might have the "Karen Thompson"

16   even name in it that might not have anything to do with the

17   underlying allegations in plaintiff's First Amended

18   Complaint, and there are thousands and thousands of documents

19   that, as we've learned, plaintiff --

20        THE COURT:  I need a number, Counsel.  How many are

21   there?  You must have pulled them.  You must have them on

22   your desk.  Tell me how many there are.

23        MS. ROHR:  I don't have them on your desk,

24   Your Honor.  I don't.

25        Dawn, maybe you can address the number of documents

1   so far.

2                MS. OSTER:  What I can tell you, Your Honor, is

3   there are 10,000 documents that were produced to us by

4   plaintiffs.  We have spent a good part of seven days now

5   going through that to see -- so we can compare and contrast

6   with what plaintiff has and what we have.  I've had three to

7   four lawyers working nonstop over the weekend to try and get

8   an answer for what has actually been produced to us.

9                As to the documents that we have in our possession,

10  we do have documents.  It was never our intention not to

11  produce them, you know, assuming we could have some clarity,

12  and as to those documents, there are at least 4,000 that I

13  can identify right now.

14               THE COURT:  Okay.  But I want to tell you --

15               MS. OSTER:  Many of the --

16               THE COURT:  -- and I know that you don't deal with

17  the federal court all that often, you don't deal with me very

18  -- that often -- 4,000 documents is not a lot of documents.

19  Four million --

20               MS. OSTER:  -- understand, Your Honor, but --

21               THE COURT:  -- 400 million -- I've had those cases.

22               MS. OSTER:  -- not able --

23               THE COURT:  4,000?  No.  That's not a lot of

24  documents.

25               MS. OSTER:  The only point that I raised with that,

1    Your Honor, is that, if I could have a few more days, I'm

2    happy to do what -- you know, obviously comply with the

3    order.

4            THE COURT:  Absolutely.  You can have some --

5            MS. OSTER:  The only reason why I bring up that --

6            THE COURT:  -- more time.  We'll talk about timing,

7    Ms. Oster.

8            MS. OSTER:  Okay.

9            THE COURT:  Not a problem about timing.  Okay?

10           MS. OSTER:  Great.

11           THE COURT:  But production is going to be ordered

12   in this case.  These allegations are very serious.  She's

13   alleging the detective violated the federal Constitution,

14   interfered with an -- with this person's constitutional

15   rights, dissuaded witnesses from testifying in a criminal

16   trial.  It doesn't get any more serious than this.  Okay?

17           MS. OSTER:  We agree, Your Honor.

18           THE COURT:  So when we have "the" most serious

19   allegations that we face in these civil cases -- I mean, this

20   isn't a contract or, you know, somebody -- or somebody ran

21   into the back of somebody's car.  This is the Government has

22   used its power -- this is the allegation -- has used its

23   power to deny someone their constitutional rights, and under

24   Rule 26, when I'm looking about proportionality, it doesn't

25   get any more significant than this, and then it's what's the

1    burden to the defendants?  And what you said to me is you've

2    got 4,000 documents.  Okay.  That's not a hard -- you know,

3    in judge's school, that's an easy one.  You know what I'm

4    saying?

5              MS. OSTER:  Yes, Your Honor.

6              THE COURT:  All right.  So those documents are

7    going to be turned over.  If you need to --

8              MS. ROHR:  (Indecipherable.)

9              THE COURT:  Hang on a second.

10             If you really believe that there are some

11   privileged documents, log them.  Give a privilege log to the

12   other side.  Let them look at them.  If they want to

13   challenge them, you can submit them to me in camera, and I

14   will read them, and before I order them -- to turn them over,

15   I'll get on the phone with you and talk to you about it.

16             Ms. Rohr, I think you wanted to say something.

17             MS. ROHR:  Oh.  I'm sorry, Your Honor.  I didn't

18   mean to interrupt you.

19             Regarding the privilege log, because of the

20   overbreadth, there was no, in my opinion, place to begin and

21   the -- I represent to you that during this investigation

22   there were many individuals that were potentially considered

23   to be a subject or the potential murderer.

24             THE COURT:  Sure.

25             MS. ROHR:  So we have (indecipherable) of

1    individuals -- of males, of females.  We had references to,

2    let's say -- I'll make up a name -- "Sally Jones'" DNA was

3    taken.

4                    THE COURT:  Yeah.

5                    MS. ROHR:  "Sally Jones" was never indicted or

6    arrested, and I don't know how many of those plaintiffs have

7    because I know they received a plaintiff -- thanks to a

8    conference before, plaintiff received her entire file from

9    the criminal court, the majority of which was probably turned

10   over from the prosecution but -- I don't know what's in

11   there, but I do know that in the whole totality there were

12   many, many people looked at, many people -- Your Honor

13   ordered that their names and addresses not be turned over to

14   Ms. Park.  So I'm really hesitant to -- and I know Dawn feels

15   the same way -- to just make a list of these people and hand

16   over these reports regarding them that have nothing to do

17   with Kelly Soo Park.

18                   THE COURT:  Okay.  And I understand your position,

19   and I disagree with it.  Okay?  What you're saying is that

20   people that they considered and then they cleared, they

21   shouldn't know about that, and I don't know that.  I haven't

22   seen all those records, and that actually is not my job.

23   We're giving it to the other side, we'll do it under a

24   protective order, they're not going to share that with

25   anyone, they're not going to go out and tell the *L.A. Times*

1   that "Ms. Sally Jones" was a suspect in this case at any

2   time, they're not going to do that, and they're going to go

3   through those.  That's what they do.  They're going to go

4   through those and get more ammunition why they think

5   Detective Thompson was misguided when she focused her laser

6   beam on Ms. Park, and all that's included.  Okay?

7          MS. ROHR:  Do we submit a privilege log to you?

8          THE COURT:  No.  You can submit privilege log to

9   both of us, but the privilege log is just going to say, you

10  know, "To," "From," and the subject, and what the privilege

11  is.  Right?

12         MS. ROHR:  Correct.

13         THE COURT:  Okay.  And, you know, you need to give

14  them enough detail so they know whether they want to

15  challenge it or not.

16         But, yes, you -- no, I don't want a -- what would I

17  do with a privilege log?  That would just put that whole

18  burden on my lap to try and think, "I wonder what plaintiffs

19  would think about this document?" and "I wonder what

20  arguments they would make to produce it?" and then I'd be

21  like an advocate.  Let the plaintiffs' lawyers see the

22  privilege log, and they can come and say they want me to take

23  a look at "documents 1, 3, 5 and 7," and I'll do that in

24  camera.  Okay?

25         MS. ROHR:  That part --

1          MS. OSTER:  Okay.

2          MS. ROHR:  -- Your Honor, of course, I don't want

3    you to have to become an advocate, just that you would

4    consider an in camera review?

5          THE COURT:  Yes.  Here's how I do it with privilege

6    logs -- okay? -- if the plaintiffs argue that they want some

7    documents turned over, I have you submit those in camera.

8    You submit those in camera with your privilege log, and then

9    I read them, and I see whether I think they're privileged.

10   Assuming I disagree with you, I call you ex parte on the

11   record, and I tell you, "I've read this document, you think

12   it's attorney-client privilege because it was a lawyer that

13   was cc'ed, and it's lawyer Bob Smith.  I disagree with you.

14   I don't think that by cc'ing the lawyer it became attorney-

15   client privilege.  Tell me why you think I'm wrong."

16          And then you put your arguments on the record, and

17   then I say, "Okay.  I'm going to overrule that objection,"

18   and then we go through the whole list of all the documents

19   that I think should be turned over, I let you put your

20   objections on the record, and then I bring the other side in,

21   and I tell them, "Counsel, I talked with defendants' counsel

22   about the privilege logs.  You wanted documents 1, 3, 5, and

23   7.  You're going to get 1 and 5, you're not going to get 3

24   and 7, and I'm going to order defendants to turn those over

25   next Friday."

 1          That's how I do it.  All right?  And then, if you

 2  want to appeal my ruling, you have an opportunity to do that.

 3          MS. ROHR:  All right.  Thank you very much for

 4  considering -- because I know that will take you time, but

 5  thank you for that.

 6          THE COURT:  It's my pleasure.  Look, I want to tell

 7  the defendants something.  I get it.  I understand you don't

 8  want to share with a suspect in a murder case your file, and

 9  in the normal course of events, I would not require that you

10  do that, but we're beyond the normal course of events.  We

11  have allegations that for purposes of discovery I'm going to

12  assume are true, and that is is that Detective Thompson did

13  something she was not supposed to do under her training,

14  under the state law, under the federal law, and under the

15  federal Constitution, and when you have an allegation that's

16  accepted as true that some law enforcement officer has

17  violated the Constitution, I've got to let the other side

18  see.  They've got to get their case, and it's in your files,

19  and so they get to see that.

20          I understand that in a criminal case they were

21  given materials from the D.A., but as you know, there are

22  many things that aren't turned over in the criminal case,

23  that there's no obligation for Detective Thompson and the

24  D.A. to turn over during a criminal case, and sometimes,

25  unfortunately, as I know you've heard and if you read in the

1  papers -- sometimes there's thing the D.A. is supposed to

2  turn over and she doesn't.  Okay?

3       So I believe that in this case, with these

4  allegations, that the plaintiffs are entitled to wide-ranging

5  discovery, and I'm going to let them get that.  On the same

6  token, I want to protect certain information, and I've

7  allowed you to redact that.  If there's attorney-client

8  material, that's fine.  You can show that to me.  If you --

9  if I agree, I'm going to withhold that as well.

10       Okay, Ms. Rohr.  Your turn to respond if there's

11  anything you want to say to that.

12       MS. ROHR:  Oh, I'll just say thank you.

13       THE COURT:  Sure thing.

14       Okay.

15       MS. ROHR:  Thank you.

16       THE COURT:  Ms. Oster, anything you wanted to add

17  on that?

18       MS. OSTER:  No, Your Honor.

19       THE COURT:  Ms. Oster, tell me what's a reasonable

20  amount of time for you to begin the rolling production of

21  these 4,000 documents.

22       MS. OSTER:  Fourteen days.

23       THE COURT:  Okay.  And would that be -- when I say

24  "rolling," that means you just start turning over the ones

25  you've reviewed and they're ready for production.  Is that

1    going to take you 14 days to have any of them ready?

2                MS. OSTER:  It'll take me 14 days to have any of

3    them ready.

4                THE COURT:  All right.  Starting in 14 days -- I'll

5    hear from plaintiffs in a second.  Today's the 22nd of June

6    [sic].  November 5th you begin rolling production.  I'll give

7    you -- beginning on the 5th, I want the production finished

8    by the end of November, November 30th -- all the documents

9    produced.  All right, Ms. Oster?

10               MS. OSTER:  Yes, sir.

11               THE COURT:  All right.  Let me hear from

12   plaintiff's side.  What do you think of my schedule?

13               MS. JAMES:  Well, our concern, Your Honor, is that

14   we currently have a discovery cutoff of November 26th.  We've

15   entered a stipulation to move that to December 10th, but that

16   is either putting us after the existing date or pretty close

17   to the end of our discovery cutoff.  So I think we would like

18   to move that up.  They've had a lot of time with these

19   requests and a lot of time with these documents.  So, if

20   there's any way we could move that schedule a little bit

21   forward, we would appreciate it.

22               THE COURT:  There is.  Who's the D.J. on the case?

23               MS. JAMES:  Judge Otero.

24               THE COURT:  Okay.  All right.  Here's the deal:

25   I'm going to move that up to the 19th.  Okay?  And,

1    therefore, I'm going to assume the discovery is not going to

2    be continued till December 10th.  I'm going to move that up

3    -- what did I say?  I'm sorry.  I was looking at the wrong --

4              THE CLERK:  November 30th?

5              THE COURT:  Discovery's -- I'm going to move that

6    -- see, now we're in to Thanksgiving week.

7              So discovery is closing on November 26th?  Is that

8    it?

9              MS. JAMES:  Yes.

10             MS. OSTER:  Yes, Your Honor.

11             THE COURT:  All right.  See, you know, we're really

12   backed up because I'm going to have -- production is going to

13   have to -- when are you going to take -- are you taking

14   depositions at -- when you get this discovery, Ms. Walker

15   [sic]?

16             MS. JAMES:  Not -- that's what we would like.

17             THE COURT:  How many depositions are you taking?

18             MS. JAMES:  We don't -- I'm not sure yet, but we

19   certainly will have at least three or four.

20             THE COURT:  Okay.  And whose --

21             MS. JAMES:  It will be based on these documents.

22             THE COURT:  Whose depositions are you taking?

23             MS. JAMES:  Well, obviously, the defendant, and a

24   couple of others involved.  Her -- in terms of her partner.

25             And, Jaya -- Ms. Gupta, maybe you have some --

```
 1              THE COURT:  Okay.  All right.  So here's the deal:
 2  You're going to have to take those -- if this date doesn't
 3  get moved, you're going to have to take those Thanksgiving
 4  week; right?  The 19th, 20th, and 21st?
 5              MS. JAMES:  Right.
 6              THE COURT:  I mean, the 23rd's a day.  Is it --
 7  does it close on the 26th?  Can you take depos on the 26th?
 8              MS. JAMES:  We would --
 9              MS. OSTER:  Your honor --
10              MS. JAMES:  -- prefer not to.
11              MS. ROHR:  Your Honor?
12              THE COURT:  Yes.
13              MS. ROHR:  I am going to be out of state from the
14  21st through -- starting the 21st to the 25th, coming back on
15  the 26th.  I've spent $1,000 for my ticket to go back and be
16  with my family in the Midwest.
17              THE COURT:  Got it.
18              MS. ROHR:  -- birthday is Thanksgiving day, and
19  it's a significant birthday.  I know they're all significant,
20  but this is even more so.
21              THE COURT:  All right.  I get it, and I'm not
22  getting in the way of that.
23              I will allow the -- Ms. Oster, you don't have to
24  begin the production until the 5th, but you have to complete
25  it by the 16th, November 16th.  So there can be depositions
```

1    on the 19th and 20th, you've heard Ms. Rohr is not going to

2    be available on the 21st, and you can do depositions on the

3    26th.  All right?  I suppose you can do depositions on the

4    17th, the Saturday.

5           But, Ms. Walker, I want to tell you something.

6    This is not a -- you know, a problem of my creation, and I

7    can only do so much.  Okay?

8           MS. JAMES:  I appreciate that, Your Honor.

9           THE COURT:  All right.  So --

10          MS. ROHR:  Um --

11          THE COURT:  -- discovery no later than the 5th,

12   Ms. Oster.  You produce those documents -- start producing

13   those documents on a regular basis.  By the 16th they all

14   have to be produced.  All right?

15          MS. OSTER:  Yes, Your Honor.

16          THE COURT:  Okay.  And you --

17          MS. ROHR:  Your Honor, I have --

18          THE COURT:  Just a second, Ms. Rohr.

19          You folks should schedule these depositions right

20   now, this week.  Don't wait until the week of the 19th and

21   start calling people and see if they're available because

22   they're not going to be, and then you're going to be back in

23   with another emergency motion about depositions.

24          Ms. Rohr, your turn.

25          MS. ROHR:  I'm sorry.  I can't tell on my phone if

1  you're about to speak.

2        We have submitted a stipulation, and I don't know

3  if a courtesy copy was presented to Your Honor, and everyone

4  agreed to continue the discovery to, I believe -- what was

5  it? -- the --

6        THE COURT:  December 10th, I heard.

7        MS. ROHR:  Was it the 10th?  I think so.  I don't

8  have it in front of me.  And I know -- I don't know.  I don't

9  know to what extent you would be inclined -- (indecipherable)

10 -- to influence Judge Otero's calendar, but this was a case

11 -- a situation, unlike other ones I've had in front of him,

12 where the trial date isn't until February 26th.

13       THE COURT:  Sure.

14       MS. ROHR:  So there is a little more time in

15 between the motion filing cutoff and the discovery cutoff,

16 and we all agreed just to move the motion filing cutoff for

17 three weeks and, I believe, the discovery cutoff for two

18 weeks, just giving a little room there but still plenty in

19 advance of the pretrial conference and the hearing cutoff

20 date and all those other dates.

21       THE COURT:  Okay.  Ms. Rohr, you don't have to

22 apologize for interrupting me.  I know how hard it is on a

23 telephone conference call to figure out when it's your turn

24 to talk.  That's number one.

25       Number two, I'll give Judge Otero a call after the

1    hearing and ask him if he'll consider it.   Okay?

2              MS. ROHR:   Thank you.   It would give us a little

3    more room.   I know Ms. Oster hasn't spoken up as I did, and I

4    apologize if I was out of line, but I know she is taking a

5    one-week vacation, and she says she goes away only once

6    during an entire year, and I would hate to see that have to

7    be canceled or be a burden to her.   She's been -- they've

8    been a tremendous help in carrying the ball to such an extent

9    for Karen Thompson in this case and helping out the

10   City Attorney's Office so --

11             THE COURT:   I understand.

12             And, Ms. Oster, you know, I think vacation is

13   important too, and I hope you're going to be able to do it.

14             You know, one thing you folks could do is consider

15   taking some depositions on Saturdays.   I know that's a lot, I

16   know you have families and obligations and things like that

17   but -- you know, I'll give Judge Otero a call.

18             I will tell you this:   the district judges, in my

19   estimation, have learned that these cases settle, and they

20   settle, you know, a certain time before -- maybe a week or

21   two before trial.   And how do you know when it's going to

22   settle?   All you got to do is figure out the trial date.   And

23   if it doesn't -- if you don't move the trial date, then you

24   don't move the settlement.   But I will call Judge Otero after

25   the hearing and tell him that I spoke with you and you guys

1    are kind of jammed up and we're hoping that you could have

2    until December 10th for discovery.  Okay?

3            MS. ROHR:  Thank you, Your Honor.  And we haven't

4    asked to move the trial date or the pretrial conference.

5            THE COURT:  I understand that, and that's a good

6    move because I'm pretty sure he would --

7            MS. ROHR:  Right.

8            THE COURT:  -- say no to that.  I know a lot of the

9    judges would say no to anything moving the trial date or

10   pretrial.

11           MS. ROHR:  Yeah.

12           THE COURT:  Okay.  So -- and the other thing is is

13   to the extent that there are privileged documents and there's

14   a privilege log, I will get -- go over that as soon as I can,

15   but that's going to have to be filed, Ms. Oster, on the same

16   date.  You're going to have to get that to me on the 16th and

17   so that I can look at it and -- perhaps over that weekend and

18   get on the phone with whoever is going to talk with me about

19   that privilege log.  Otherwise -- this is assuming that the

20   -- if the discovery cutoff is moved till December 10th, I'm

21   assuming that you're just going to do those depositions,

22   like, the first week of December.  That's what I'm guessing.

23   And that will give everybody a little more breathing room.

24   But if it's not moved --

25           MS. ROHR:  That would be awesome.

```
 1               THE COURT:  Yeah.  If it's not moved, then I need
 2    to see the privilege log -- well, I guess, Ms. Walker, you
 3    need to tell me if there's anything you want me to look at in
 4    camera on the privilege log, and I'll do that over
 5    Thanksgiving week.  Okay?
 6               MS. JAMES:  Okay.
 7               THE COURT:  And it doesn't -- it's not a great
 8    option, but it's the only one we have.
 9               All right.  Now I want to turn to the other --
10               MS. JAMES:  No.  I know, and hopefully we don't
11    come to that.
12               THE COURT:  Oh.  I'm sorry, Ms. Walker?
13               MS. JAMES:  Oh, I'm -- hopefully that will not come
14    to pass so --
15               THE COURT:  Okay.
16               MS. JAMES:  -- we don't have disturb you on
17    Thanksgiving.
18               THE COURT:  All right.  Now I want to turn to the
19    other side, and what I believe is -- as I understand it, is
20    the problem is is that the defendants are -- feel that the
21    plaintiffs have done a document dump and just turned over the
22    -- I think it's about 10,000 pages of discovery that they got
23    from the D.A. in the criminal case.
24               Is that -- did I properly characterize that,
25    Ms. Oster and Ms. Rohr?
```

1          MS. OSTER:  Yes, Your Honor.

2          THE COURT:  Okay.

3          MS. ROHR:  Yes.  Ten- -- or even more.  I thought

4   it was closer to 11-.  And I'm not exactly sure everything

5   came from the D.A.  I think that might be their position.  I

6   don't know if it's in totality.

7          THE COURT:  All right.  And you feel that they

8   should have gone through those documents and provided them,

9   like, in a response to a particular request for production;

10  am I right?

11         MS. OSTER:  Absolutely.

12         THE COURT:  Okay.  And let me tell you what my

13  reading of the Federal Rules of Civil Procedure are.  The

14  responding party is allowed to produce them as they're

15  normally kept in the normal course of business or in response

16  to a particular request, and what they did was is -- this is

17  what I understand, and you can correct me if I'm wrong,

18  because there seems to be a slight bit of uncertainty that

19  they all came from the D.A., but what I think happened is the

20  D.A. turned the documents over to plaintiff, Ms. Park,

21  probably her criminal counsel, and now the plaintiff's civil

22  counsel is giving them back to the defendants.

23         I mean, I understand it's different, it's not the

24  D.A. this time, although I imagine that Detective Thompson

25  played a big role in what was assembled for production, but

1    isn't that within the rules for them to provide those

2    documents the way they got them?

3            I'll hear from the defendants.

4            MS. OSTER:  Your Honor, it strikes me as somewhat

5    unfair that a production that happens to have been provided

6    by the D.A. -- or, I'm sorry -- the criminal counsel to the

7    plaintiff, it's just by happenstance to be provided on a

8    disc, and then that process, which probably was the easiest

9    for the defense counsel to provide it to plaintiff, pursuant

10   to the ex parte that we recently had, that I then, as the

11   defendant, have no understanding of which of those 11,000

12   documents corresponds to allegations in the complaint, then I

13   don't understand discovery.  And I normally do on motions so

14   maybe I'm missing something.

15           But when I'm asking a plaintiff to identify

16   documents that are responsive to allegations or that support

17   allegations in their complaint and they say "Oh, it's just

18   one document, and you go ahead and find out which of those

19   11,000" or "10,500 are responsive to what you think we

20   meant," then that's okay.  How is that even possible,

21   Your Honor?  How can I base a motion, how can I identify what

22   documents they have to support their claims when I'm looking

23   at 11,000 documents and a lot them, Your Honor, relate to an

24   underlying -- or, an ongoing fraud complaint -- criminal

25   complaint that's been lodged against the plaintiff?

1          THE COURT:  Okay.  Let me turn to plaintiffs, and

2  let me --

3          MS. OSTER:  There's a whole other issue there.

4          THE COURT:  -- hear from plaintiff's counsel.

5          MS. JAMES:  I'll let Ms. Gupta address this one.

6          JAYA C. GUPTA:  Your Honor, we received the

7  documents in the way that they were produced, as a single

8  document that comprises 11,000 pages.  I will represent to

9  you that we did not insert any irrelevant documents in that

10  document.  We simply produced what we received.  Those

11  documents are responsive to the request -- all of them.

12  There were requests that asked for Defendant Thompson's

13  knowledge -- or, you know -- let me rephrase.

14          They asked for all documents that support the

15  contention that Defendant Thompson made implicit threats to

16  Melissa Ayala's safety.  The documents that are responsive to

17  that aren't necessarily just the documents in the discovery.

18  It's the entire corpus of discovery itself because documents

19  that are not there also support that she made implicit

20  threats to Ms. Ayala's safety.

21          So it's the entire corpus of discovery that is

22  responsive.  I understand that it is a large document, but

23  that is how we received it, and based on case law from this

24  district, we don't believe that we have an obligation under

25  Rule 34 to identify the specific pages in the single document

```
 1  that are responsive to the request.
 2            THE COURT:  Do you have an index?
 3            MS. OSTER:  Your Honor --
 4            MS. GUPTA:  -- do not.
 5            MS. OSTER:  -- I've been creating the index over
 6  the past seven days, employing four lawyers here to work 24/7
 7  to figure out what they gave to us.
 8            THE COURT:  Hang on a second.
 9            MS. OSTER:  How is that correct?
10            THE COURT:  Hang on a second.
11            Ms. Gupta, do you have an index?
12            MS. GUPTA:  We do not have an index.  We had
13  produced the document the way that we received it and so --
14            THE COURT:  I understand you produced the --
15            MS. GUPTA:  -- we didn't believe that an --
16            THE COURT:  -- documents the way you received it,
17  but have you indexed the documents?
18            MS. GUPTA:  No, we have not, Your Honor.
19            THE COURT:  How's that working?  How do you know
20  where to find a document?  How -- what are you doing?
21  There's 11,000 documents there.  When your partner says,
22  "Hey, what about this interview with Ayala?" what do you do?
23  Like:  Let me start:  page 1, page 2, page 3?  Come on.  How
24  are you going through the documents?
25            MS. GUPTA:  We go through them -- I mean, we --
```

1  that's how we look at them.  We just -- I mean, it's a single

2  document.  I think it's -- we would have to create the

3  document divisions in the document that we've received.

4  That's not -- I don't believe under Rule 34 that's our

5  responsibility.

6           THE COURT:  Well, here's the deal -- and, you know,

7  for all of the lawyers here -- a lot of what I'm doing here

8  is not about the rules.  I'm trying to find practical

9  solutions to problems that are presented with me -- to me,

10 and I believe under the Federal Rules of Civil Procedure I

11 have tremendous discretion to do that.

12          Here's what you both want:  You both want to know

13 what's in the 11,000.  Ms. Oster's group has been going

14 through that for a week trying to figure it out, and I'm

15 trying to figure out if you have another way.  Are -- can you

16 -- are they searchable?  Are the documents searchable?

17          MS. GUPTA:  Yes.  They are OCR'ed.

18          THE COURT:  Okay.  And so -- and the version you

19 turned over to Ms. Oster is searchable?

20          MS. GUPTA:  Yes, we believe so.  It should be

21 OCR'ed.

22          THE COURT:  All right.  Ms. Oster, can you search

23 the document?

24          MS. OSTER:  Your Honor, what -- I am not aware that

25 these are PDF'ed -- I'm sorry.  They are PDF'ed and are not

1  necessarily searchable, no.

2      THE COURT:  Well, this is a solution to this

3  problem if you ask me:

4      Ms. Gupta, so the OCR -- what you're talking about

5  is there is a PDF version of documents that you can search

6  on; right?

7      MS. GUPTA:  Yes.  And that's what we've produced,

8  Your Honor.

9      THE COURT:  That's what you have.  All right.  Tell

10 Ms. Oster how you do it.  Is there a special software you

11 use, or is it just -- is it the upgrade of Adobe or just

12 regular Adobe and you can search those documents?

13     MS. GUPTA:  It's just you do a "Control F" in the

14 document once you've opened it.  It should be -- you can do

15 it in Adobe PDF.  I don't believe you need any special

16 software.

17     THE COURT:  All right.

18     MS. GUPTA:  -- control.

19     THE COURT:  Here's what I'm going to do:

20     Ms. Gupta, when we're done on the phone today, you

21 and -- figure out a time when you and Ms. Oster can get the

22 documents up in front of you, each on your own screen, and

23 you talk to each other and you figure out how these documents

24 are searchable.  All right?

25     Ms. Oster, I'm not going to require that they

1    separate the 10,000 documents -- or, I think it's 10,000 or

2    10,500 pages, as opposed to 10,000 documents.  So it's

3    probably something significantly less than 10,000 documents,

4    but, anyway, that, I think, is the solution, at least short

5    term, to the problem.  It's how you figure out what's in

6    there and what's not.  It is searchable, and that is going to

7    help you organize these documents.

8         But I am not going to go back -- and I want to tell

9    you why, Ms. Oster.  I know that the D.A. is different than

10   Detective Thompson.  I do know that, and I know that it's not

11   all -- you can't just throw out the word "Government" and

12   everybody's all the same, but during the criminal case what I

13   understand is Detective Thompson and the D.A. produced the

14   documents in this one file, in this 10,000-page file, and

15   what you're arguing is now when they --

16        MS. OSTER:  No, Your Honor.  That is --

17        THE COURT:  -- give it back it's a document dump,

18   and I'm like, well --

19        MS. OSTER:  No, Your Honor.  That's not what's

20   happened here.  That is not what's happened here.

21        THE COURT:  Go ahead.

22        MS. OSTER:  That is not what happened here.  If

23   that had happened, maybe they had an argument, but these are

24   documents that were collected over the course of an entire --

25   however -- five-year period, and then to suggest to me that I

1  have to guess which one of those documents supports an

2  allegation in a complaint --

3          THE COURT:  Well, you know, this -- your argument

4  would be a heck of a lot --

5          MS. OSTER:  How do I do that?

6          THE COURT:  -- more persuasive if they didn't come

7  from the Government in the first place.  Okay?

8          MS. OSTER:  Well, I -- but that isn't necessarily

9  --

10          THE COURT:  So they -- the Government gave them the

11  documents, they gave them back to you, and now it's "Oh, it's

12  such a mystery about what all the documents are."  I don't

13  know.  I would imagine Detective Thompson played a role in

14  the production of almost all of them.

15          MS. OSTER:  That presupposes, Your Honor.  That may

16  be true for some of them.  I will grant the Court that.  No

17  doubt that some of those documents were produced by the

18  Government, but I certainly didn't produce -- or, the

19  Government in the underlying criminal case didn't produce the

20  tax returns, for example, or all the documents that relate to

21  the --

22          THE COURT:  Let me go back to -- let me go back to

23  the plaintiffs, then.

24          Ms. Gupta, I'm -- I guess I'm not understanding

25  everything.  I thought this was the criminal discovery that

1    you're just returning back to the defendant.

2            MS. GUPTA:  It is, Your Honor, and I will represent

3    that that document -- I believe it's Park -- I can give the

4    specific Bates number, but that is the criminal discovery

5    that we turned over.  We've turned over other documents,

6    including tax returns, but that is not the document that

7    defendants have taken issue with.

8            THE COURT:  All right.

9            MS. GUPTA:  That's not within the 11,000-page

10   document.  The 11,000-page document does have Ms. Park's bank

11   records and other financial documents, but those are

12   documents that were turned over to Ms. Parks [sic] and to her

13   criminal counsel in the criminal case.

14           THE COURT:  Okay.

15           MS. GUPTA:  Again, I represent to you that we have

16   not inserted irrelevant documents.  We've simply turned over

17   what we received.

18           THE COURT:  All right.  Let me just get -- because

19   I don't know the -- I don't have the whole picture.  So

20   during the criminal case was there rolling discovery in which

21   the D.A. was turning things over to Ms. Park's defense

22   counsel over a period of five years?

23           MS. OSTER:  In the records that I have reviewed,

24   Your Honor, that is --

25           THE COURT:  Hang on a second.  I'm asking

1    Ms. Gupta.

2              MS. OSTER:  Pardon me.  Pardon me.

3              MS. GUPTA:  Yes, I believe so.

4              THE COURT:  All right.

5              MS. GUPTA:  But the way that we --

6              THE COURT:  So for a period of five years or so --

7    and I'm not holding anybody to the exact time line -- there

8    were documents produced on -- you know, on a regular --

9    irregular basis from the prosecution to Ms. Park's defense

10   counsel; correct?

11             MS. OSTER:  That's correct.

12             MS. GUPTA:  That is to my understanding, yes.

13             THE COURT:  All right.  And then there were other

14   documents that maybe defense counsel accumulated, or you may

15   have accumulated in the prosecution of your civil case, and

16   when Ms. Oster and Ms. Rohr said, "Hey, can we have the

17   discovery?" you assembled everything in one PDF and produced

18   it all in one PDF?

19             MS. GUPTA:  No, Your Honor.  We produced -- the

20   criminal discovery, we produced that as a single PDF.  That's

21   how we received it.  For other --

22             THE COURT:  Yeah.

23             MS. GUPTA:  -- documents that are -- that were

24   responsive to the document requests propounded by defendant,

25   we've assembled those as separate documents and produced them

1  that way.

2          THE COURT:  Okay.  So I guess my --

3          MS. OSTER:  We haven't --

4          THE COURT:  -- you may have just resolved my

5  misunderstanding.  And when you were saying, "We turned them

6  over the way we got them," you didn't get them from the D.A.

7  You got them from Ms. Park's criminal lawyer?

8          MS. GUPTA:  Yes.

9          THE COURT:  Okay.

10          MS. GUPTA:  Yes, Your Honor.

11          THE COURT:  So Ms. Park's criminal lawyer was

12  accumulating these documents over a period of years, and he

13  saved them on a PDF, and then he gave the PDF to you?

14          MS. GUPTA:  Yes, Your Honor.

15          THE COURT:  All right.

16          MS. JAMES:  Can I just interject, though?  I don't

17  think that it was a period of years for the criminal

18  discovery -- Ms. Gupta maybe can correct me if I'm wrong --

19  but they have may been compiled -- I mean, the Government may

20  have been compiling some of those over a period of

21  investigation, but the actual criminal case was, I think,

22  only charged and pending for a matter of months.  Again,

23  Ms. Gupta can correct me if I'm wrong but --

24          MS. ROHR:  (Indecipherable.)

25          MS. JAMES:  So this is the criminal discovery.

1   This is the criminal discovery that was turned over post --

2   you know, post-charge and turned over to the defense as part

3   of the D.A.'s discovery obligation.

4             THE COURT:  Okay.

5             MS. ROHR:  She was arrested in 2010, and the trial

6   wasn't until 2013, in June.

7             THE COURT:  Okay.  Thank you for that.

8             All right.  I don't have a good answer for this,

9   and I'm trying to figure out a good solution that would send

10  both sides home unhappy.  That's what I'm trying to do here

11  because I don't see an obvious answer here.

12            MS. OSTER:  Your Honor, can I just -- we were

13  talking earlier about the proposition that you have a need to

14  approach issues from a practical perspective.

15            THE COURT:  Yeah.

16            MS. OSTER:  I'm preparing a motion for summary

17  judgment, and I'm going to attack each of the allegations in

18  the Complaint.

19            THE COURT:  Yeah.

20            MS. OSTER:  When I say -- and when I -- what

21  documents exactly are supportive of their allegation as a

22  particular paragraph in their complaint, it cannot be 11,500

23  -- 10,500.

24            THE COURT:  Well --

25            MS. OSTER:  It can't be.  Why am I not entitled to

1    know what they think are responsive documents to a very

2    particular allegation in their complaint?  Why am I not

3    entitled to know that?  I am.  How can I not be?

4            If I -- I get documents all the time from my

5    clients -- or, you know, the people that manage the day-to-

6    day cases, and sometimes they send it to us on a thumb drive,

7    and sometimes they send it to us on a CD, and sometimes they

8    initiate a Dropbox.  It could be various forms.  If I went to

9    -- I have never had this in my 27 years of practice,

10   Your Honor.  If someone said, "Oh, they gave it to me on a

11   CD, and I don't have to tell you anything that you want to

12   know about what's on it," from a practical perspective, how

13   -- you would think that a plaintiff would want me to know

14   "Here are the great documents.  Here is the smoking gun."

15   (Indecipherable) none of that.  I have to guess.

16           THE COURT:  Okay.  Let me hear from plaintiff.

17           Ms. Gupta or Ms. Walker?

18           MS. GUPTA:  Well, Your Honor, under the *Rutherford*

19   case, the court clearly says that we're -- that this is an

20   invasion of the Rule 33 limit on contention interrogatories.

21   We're not required to specifically identify each document

22   that we believe is a point of contention.  That's just not

23   required under the rules.  We're required to turn over the

24   responsive documents, but we're not required to identify each

25   and every page of that.  That's unduly burdensome on

1    plaintiff to have to do that.  Also, it's --

2            THE COURT:  I'm going to disagree with you on this

3    one, Ms. Gupta.  I'm going to order that you supplement your

4    responses and identify the documents that support your

5    claims.  All right?  And I'm going to have you do that --

6    today is the 22nd.  I'm going to have you do that by

7    November 9th.  Okay?  You go through and find out what --

8    tell them -- obviously, when you go to trial, you got to

9    know.  Right?  You're not going to tell the jury, "Hey" --

10           MS. GUPTA:  (Indecipherable.)

11           THE COURT:  -- "there's 10,500 pages in there.  You

12   figure it out."  You're going to say, "This is the document

13   that shows that Detective Thompson did this.  This is the

14   document that shows she did this, she did this."  So the only

15   question is is are -- do the defendants have to wait until

16   trial to find out what documents support your claims, and I'm

17   going to side with the defendants this time.  I'm going to

18   give you until November 9th to supplement your discovery

19   responses and identify those documents over your objection.

20           All right.  Anything else I need to fix before I

21   let you go?

22           Plaintiffs?

23           MS. JAMES:  No, Your Honor.

24           THE COURT:  All right.  Defendants?

25           MS. ROHR:  I want to thank you, Your Honor, and,

1   also, as you were foreseeing, I know the many, many pretrial

2   conference orders that I've worked on from the defense point

3   of view that we all work on it together.  Judge Otero isn't

4   going to accept a pretrial conference order that has not

5   synthesized what supports the issues in this case.  So I

6   thank you for heading us in that direction.

7           THE COURT:  All right.  So you think I'm one out of

8   two today?

9           MS. OSTER:  (Laughs.)

10          THE COURT:  I'm batting .500.

11          MS. OSTER:  No.  Actually, Your Honor, you're two

12  out of two.  You're two out of two.

13          THE COURT:  All right.

14          MS. OSTER:  We never intended not to produce.  So

15  we're happy.  Maybe that doesn't work in with the formula,

16  but we're happy on both counts.

17          THE COURT:  Okay, folks.

18          MS. OSTER:  All right.

19          THE COURT:  Have a good week, and call me if you

20  need me.  Bye-bye.

21          MS. OSTER:  Thank you, Your Honor.

22      (Proceedings adjourned at 11:46 A.M.)

23  ///

24  ///

25

1

2

3

4                                CERTIFICATE

5        I certify that the foregoing is a correct transcript

6    from the electronic sound recording of the proceedings in the

7    above-entitled matter.

8

9    /s/ Julie Messa                  October 31, 2018
     Julie Messa, CET**D-403          Date
10   Transcriber

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25